IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| PATSY FERCHO, ALLEN FERCHO,<br><br>                    Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br>JENNY L. NELSON, OLIVIA<br>RIEGER, ERIC BARNOSKY,<br>DONOVAN WIND,<br><br>                    Defendants. | CV 18-86-BLG-DLC-TJC<br><br><br>**FINDINGS AND<br>RECOMMENDATION OF<br>U.S. MAGISTRATE JUDGE** |

Plaintiffs Patsy and Allen Fercho filed this action against Defendants United States, Jenny L. Nelson, Olivia Rieger, Eric Barnosky, and Donovan Wind arising out of an arrest of Patsy Fercho on the Northern Cheyenne Indian Reservation on November 21, 2015. The arrest occurred in connection with a custody dispute concerning the Ferchos' grandsons.

Presently before the Court are Defendant Jenny L. Nelson's Motion to Dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Doc. 38), and Defendant Olivia Rieger's Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (Doc. 44). The motions have been referred to the undersigned under 28 U.S.C. § 636(b)(1)(B), and are fully briefed and ripe for the Court's review.

1

Having considered the parties' submissions, the Court **RECOMMENDS**
Nelson's Motion to Dismiss be **DENIED**, and Rieger's Motion to Dismiss be
**GRANTED in part and DENIED in part**.

## I.     FACTUAL BACKGROUND[1]

### A. Parties

Patsy and Allen Fercho are residents of Dawson County, Montana.  In 1988,
the Ferchos adopted a daughter whose birth mother was a member of the Northern
Cheyenne Tribe.  In 2007, the Ferchos' daughter gave birth to a child, E.L., and in
2010 she gave birth to another child, L.L.  Because the Ferchos' daughter struggled
with substance abuse issues, the Ferchos eventually assumed full-time care of E.L
and L.L.

Dereck Lorenz is the natural father of E.L. and L.L.  Underlying all of the
claims in this action is a protracted custody dispute between the Ferchos and
Lorenz concerning E.L. and L.L.  The dispute eventually involved actions in

---

[1] For the purposes of these motions, the Court accepts as true the allegations
contained in the Ferchos' Complaint.  *Wyler Summit P'ship v. Turner
Broadcasting Sys, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  The Court also takes
judicial notice of court documents from the Montana Seventh Judicial District
Court, the Third Judicial District in Olmstead County, Minnesota, and the Northern
Cheyenne Tribal Court.  Further, "[i]n ruling on a motion to dismiss for lack of
personal jurisdiction, a court may consider declarations, discovery materials, and
uncontroverted allegations in the complaint."  *Nationwide Agribusiness Ins. Co. v.
Buhler Barth GmbH*, 2015 WL 6689572, *3 (E.D. Cal. Oct. 30, 2015) (citing *ADO
Fin., AG v. McDonnell Douglas Corp.*, 931 F.Supp. 711, 714 (C.D. Cal. 1996)).

Montana State District Court in Dawson County, Montana; Minnesota State District Court in Olmsted County, Minnesota; and the Northern Cheyenne Tribal Court in Montana.

Defendant Jenny L. Nelson is a resident of Dakota County, Minnesota, and is an attorney licensed to practice law in Minnesota. Nelson was retained by Lorenz to represent him in connection with a child custody action filed by the Ferchos in Minnesota.

Defendant Olivia Rieger resides in Dawson County, Montana. At the time of the events giving rise to this action, Rieger was the County Attorney for Dawson County. Rieger was involved in the Dawson County custody action, and was also involved in efforts to assist Lorenz in recovering custody of his children from the Ferchos in 2015.

Defendant Donovan Wind was, at all relevant times, an agent employed by the BIA and also served as Chief of Police for Lame Deer, Montana. Wind was involved in the arrest of Mrs. Fercho on the Northern Cheyenne Reservation in November 2015

Defendant Eric Barnosky is and was at all relevant times, the regional director for the Montana Department of Public Health and Human Services ("DPHHS"). Barnosky was also involved in efforts to assist Lorenz in recovering custody of his children from the Ferchos.

3

**B. Custody Dispute**

A petition to establish a permanent parenting plan for E.L. and L.L. was initially filed in the Montana Seventh Judicial District Court, Dawson County in 2012.  Custody of the children was ultimately awarded to Lorenz, and the Montana custody action was dismissed on December 8, 2014.  At the time of the termination of the Montana case, Lorenz and the children lived in Minnesota.

On June 1, 2015, the Ferchos filed a petition in the Third Judicial District in Olmstead County, Minnesota seeking custody, or in the alternative, grandparent visitation rights.

Three days later, Mrs. Fercho also filed a petition in the Northern Cheyenne Tribal Court on June 4, 2015, seeking custody and/or visitation rights concerning E.L. and L.L.  That same day, Northern Cheyenne Tribal Court Judge Donna Gonzales issued an order granting Mrs. Fercho emergency guardianship over the boys and set a hearing for September 2015.  Prior to the hearing, however, the Tribal Court issued a modified order on August 31, 2015, granting Mrs. Fercho physical custody of the boys along with emergency guardianship.

Pursuant to the Tribal Court custody order, sheriff's deputies in Olmstead County, Minnesota removed the children from school and daycare on September 16, 2015, and turned them over to the Ferchos' custody.

4

The following day, a hearing was held before the Tribal Court in Montana. Lorenz did not appear at the hearing.  The Tribal Court entered an order declaring Lorenz in default, and granting permanent guardianship and physical custody of E.L. and L.L. to Mrs. Fercho.

Lorenz then returned to Montana State District Court and filed an action in Dawson County to regain custody of his children.  On October 5, 2015, State District Judge Richard Simonton issued an Ex Parte Order temporarily awarding custody of E.L. and L.L. to Lorenz.  The court determined the children should be returned to the custody of Lorenz pending resolution of the jurisdictional and custody issues by the Minnesota court.  Lorenz was represented by attorney Rich Batterman before the Montana court.

Mrs. Fercho did not comply with Judge Simonton's order.  Instead she took the children to the Northern Cheyenne Reservation on October 6, 2015, where she stayed in a trailer at the Circle of Life Lutheran Church near Lame Deer, Montana.

That same day, Nelson sent an email to Rieger indicating she thought criminal charges were warranted against Mrs. Fercho.  The following day, on October 7, 2015, Batterman notified Rieger that the children had not been returned to Lorenz as ordered by Judge Simonton, and requested that Rieger consider opening a criminal investigation.  Rieger responded to Batterman and Nelson indicating that her office would be filing custodial interference charges against

5

Mrs. Fercho and would request nationwide extradition.  Rieger also informed

Nelson that it would be wise to advise the Ferchos' Minnesota attorney that they

were going to be charged criminally, and that they could cure this by returning the

boys to Lorenz.  Later that day, Rieger filed an information charging Mrs. Fercho

with two counts of felony custodial interference in the Montana Seventh Judicial

District Court.  An arrest warrant was issued for Mrs. Fercho with bail set at

$25,000.00.

On October 8, 2015, Rieger sent an email to Batterman and Nelson

informing them she had obtained a warrant for Mrs. Fercho.  She stated she had

received information that Mrs. Fercho was hiding in a church with the boys and

indicated she had an FBI contact "if it appears we will have to retrieve Patsy from

the rez."

A hearing was held before Judge Simonton in Montana State District Court

on October 9, 2015.  The court overruled the Tribal Court order, and held the boys

should be returned to their father.  At the hearing, Judge Simonton also noted that

he believed Mrs. Fercho was guilty of custodial interference.

On October 12, 2015, another hearing was held in the Minnesota court

action.  The court determined: 1) it had jurisdiction over the custody dispute, 2) the

Tribal Court did not have jurisdiction to issue permanent guardianship to Mrs.

Fercho, and 3) ordered the boys be returned to their father immediately.

Mrs. Fercho did not comply with either order.  Nevertheless, the criminal charges against Mrs. Fercho in Montana were dismissed upon the motion of Rieger on October 13, 2015,  and the warrant was quashed.  Rieger indicated the Montana court should dismiss the charges based on the assumption that criminal charges would be filed against Mrs. Fercho in Minnesota.

Also on October 13, 2015, Nelson corresponded with Rieger by email. Nelson stated she had contacted Assistant United States Attorney Lori Suek in Billings.  Nelson reported Seuk declined to consider criminal charges against Mrs. Fercho in light of the Tribal Court order granting Mrs. Fercho guardianship.

That same day, Rieger and Barnosky exchanged emails regarding Mrs. Fercho, and Barnosky contacted BIA Agent John Dodd.  Barnosky then sent Agent Dodd's contact information to Rieger on October 14, 2015.  Barnosky also sent an email to Agent Dodd containing biographical information about Mrs. Fercho and her grandsons.  He asked Agent Dodd to contact Rieger or himself if he located Mrs. Fercho.

The same day, Rieger emailed Nelson and Agent Dodd.  Rieger told Nelson she was hopeful Agent Dodd could assist Nelson in locating the boys and taking physical custody of them.  Rieger also advised Agent Dodd that the Montana arrest warrant for Mrs. Fercho had been quashed, but she believed charges may be brought in Minnesota.  Later that day, Rieger informed Agent Dodd that Mrs.

Fercho was staying in a camper next to a church on the Northern Cheyenne Reservation. Rieger had a staff member send Agent Dodd a driver's license photo of Mrs. Fercho. Rieger also told Agent Dodd that if Minnesota issued a warrant for Mrs. Fercho, she would send him a copy "A.S.A.P." That evening, Agent Dodd told Barnosky that it would "make the situation much easier" for him if the Minnesota warrant was extraditable. Barnosky relayed the request for an extraditable warrant to Rieger.

Also on the evening of October 14, 2015, Nelson sent an email to Mark Ostrem, the County Attorney for Olmsted County, Minnesota. She requested that he file charges against Mrs. Fercho. She indicated the FBI would need a warrant to enter the Reservation and retrieve the children.

The following day, Ostrem declined Nelson's request stating "[w]e cannot apply for a search warrant here and expect the FBI in another state to use it to grab the kids. Similarly we cannot in good faith charge the suspects criminally here and get an arrest warrant for the FBI to use in Montana." Nelson forwarded Ostrem's response to Rieger and described him as "utterly worthless."

Later that day, Rieger contacted Rosebud County Attorney Kristine White to discuss potential charges against Mrs. Fercho. Rieger then sent Nelson an email advising of her contact with White to determine if she was willing to charge Mrs. Fercho. In response, Nelson sent an email to White (with Rieger copied). Nelson

8

told White that she had been working with Rieger for some time on the matter, and asked if White would charge Mrs. Fercho and obtain a warrant since Mrs. Fercho was on the Reservation within the borders of Rosebud County.  An hour later, Rieger followed up with White asking her to take a look at the case.

Later in the day, Rieger emailed Nelson asking if she had filed anything in federal court.  Nelson responded that she had not, and stated she was not admitted to practice in federal court.

On October 16, 2015, Nelson told Rieger that she was planning to seek civil contempt charges against the Ferchos.  She also asked Rieger to let her know if White was willing to charge Mrs. Fercho.  Ultimately, however, White declined to file charges against Mrs. Fercho in Rosebud County because "the issue was most appropriately a federal/tribal issue."

Also on October 16, 2015, the Ferchos filed a motion in the Tribal Court seeking an order for an investigation into the abuse of E.L. and L.L. by Lorenz. Mrs. Fercho additionally filed a motion for a temporary restraining order, preventing the removal of the children from the Reservation while the Tribal social services conducted the investigation.

On October 19, 2015, Agent Dodd provided Nelson with contact information for Defendant Wind.  The next day, Nelson emailed Wind and

requested that he retrieve the children.  Wind forwarded Nelson's email to Roni
Brady who was another Northern Cheyenne Tribal Court judge at the time.

On October 21, 2015, Nelson emailed Agent Dodd and expressed her
concerns about the Tribal Court's investigation of abuse.  She asked agent Dodd if
he could retrieve the children.  He responded that he could not help her, as he had
been instructed not to take any further cases.  He advised Nelson that she would
have to seek assistance through Wind.

In the meantime, Nelson filed a motion for contempt in the Minnesota court
on October 20, 2015.  The Minnesota court held a hearing on the motion on
November 3, 2015.  The Ferchos did not appear.  Therefore, the court issued an
order directing the Ferchos to personally appear with the boys for a show cause
hearing on November 20, 2015.  The court warned that failure to appear would
result in the issuance of bench warrants for the Ferchos' arrests.  Nelson sent
copies of the order to Barnosky and Rieger.

On November 4, 2015, Nelson emailed Barnosky and complained that the
Lame Deer Police Department and Agent Dodd had been unwilling to help return
the boys to Lorenz.  Barnosky replied that he had spoken with Agent Dodd, and
understood Dodd was willing to arrest Mrs. Fercho if and when an arrest warrant
was issued.  He reported that Dodd had been instructed not to take custody of the
children up to that time because of the conflicting custody orders.

10

On November 5, 2015, Rieger provided Nelson with an update.  She also offered to enlist local law enforcement to serve Mr. Fercho with the Minnesota Court's November 3, 2015 order to show cause.  Nelson replied "[t]hat would be great!  I've been trying to figure out how we could get any attempt at personal service accomplished."  Nelson gave Rieger Mr. Fercho's work address in Dawson County.

Later that day, Rieger executed a praecipe instructing the Dawson County Sheriff to serve the Minnesota order to show cause on Mr. Fercho.  The order to show cause was served on Mr. Fercho on November 13, 2015.

On November 20, 2015, the Ferchos failed to appear at the show cause hearing in Minnesota.  The Minnesota court, therefore, issued bench warrants for the Ferchos' arrests for contempt of court, and ordered the immediate return of the children to Minnesota.  Notably, the warrant did not contain any jurisdictional limitation.  The entry on the warrant providing for execution "in Minnesota only" was unchecked.  (Doc. 40 at 172.)  The court further ordered that Lorenz was awarded permanent sole legal and physical custody of E.L. and L.L. without further ability of the Ferchos to be heard.

Later that day, Nelson emailed copies of the bench warrants to Rieger and Barnosky.  Nelson asked Rieger for a recommendation about who Nelson should contact "in order to get some help getting the kids."  Rieger suggested calling

Agent Dodd because he would "pick up" Mrs. Fercho.  She also recommended

Nelson call Tribal social services to "coordinate getting the boys."

Nelson also sent an email to Wind that same day with copies of the bench

warrants.  She told Wind that "your department has jurisdiction to serve the

warrants. . ." and requested his assistance in executing them and helping Lorenz

locate his children.  Wind told Nelson that he needed to inform a Tribal Court

judge about the warrants.  He also advised he needed to contact the Big Horn

County Sheriff's office to determine if they would enforce the warrant, and also

contact Minnesota to find out if they would extradite Mrs. Fercho.  Thereafter,

Wind arranged to have Lorenz come to the Reservation to pick up the children.

On November 21, 2015, Wind contacted Tribal Court Judge Roni Brady

concerning the warrant.  Wind asked Judge Brady if Lorenz needed to go before

the Tribal Court to get an emergency custody order, since Mrs. Fercho, the

guardian, would be taken to jail.  Judge Brady indicated that Wind could release

the children to Lorenz based on the order from the Minnesota court.  Wind also

contacted a Big Horn County sheriff's deputy, who informed him that Big Horn

County would enforce the warrant, and the County would contact Minnesota

authorities about extraditing Mrs. Fercho.

At approximately 4:00 p.m., Wind informed his dispatcher that he wanted

BIA Agent Molanna Clifford to meet him at the Circle of Life Church.  At 4:30

12

p.m. he instructed dispatch to fax a copy of the bench warrant to Big Horn County. He also requested that a Big Horn deputy drive to Highway 212 between Hardin and Lame Deer to meet the BIA vehicle in order to take custody of Mrs. Fercho. At approximately the same time, Wind arrived at the church. Agent Molanna arrived shortly thereafter.

Mrs. Fercho, her mother, Harriet Ames, and the two children were at the church. Wind advised Mrs. Fercho that he had a warrant for her arrest, and that she was going to be taken to Hardin where she would be held until Minnesota officers arrived to take her to Minnesota. Mrs. Fercho indicated she would not leave the church voluntarily. The Ferchos allege Wind threatened to use force against Mrs. Fercho and her mother, and that Mrs. Fercho became so scared she vomited. The Ferchos further allege L.L. began screaming.

Wind placed the children in his vehicle and drove to the Lame Deer police station. Agent Clifford handcuffed Mrs. Fercho and placed her into a BIA vehicle, and she was driven westbound toward Hardin.

At 4:50 p.m., Wind sent a text message to Tribal Court Judge Brady advising that Mrs. Fercho had been arrested, and that Lorenz was present with his Minnesota custody order. He asked again if an emergency custody order needed to be obtained from the Northern Cheyenne Tribal Court; Judge Brady said it did not.

At approximately 5:02 p.m., the Big Horn County dispatcher contacted officials in Olmsted County, Minnesota, who stated they would not seek Mrs. Fercho's extradition.  Agent Clifford continued driving toward Hardin with Mrs. Fercho until approximately 5:33 p.m., at which point she turned her vehicle around, returned to the church, and released Mrs. Fercho.

On May 23, 2018, Mrs. Fercho initiated this action against the United States. (Doc. 1.)  Subsequently, a Second Amended Complaint was filed which added Mr. Fercho as a plaintiff and Nelson, Rieger, Barnosky and Wind as defendants.  (Doc. 28.)  Counts I and II are brought only against the United States, and allege claims for false imprisonment (Count I), and abuse of process (Count II).  Counts III through VII are brought against Nelson, Rieger, and other defendants, and allege the following causes of action: civil conspiracy to commit abuse of process (Count III); seizure in violation of the Fourth Amendment to the U.S. Constitution (Count IV); seizure in violation of the Montana Constitution (Count V); conspiracy to inflict emotional distress (Count VI); and loss of consortium (Count VII).  (*Id.*)

## II.    DISCUSSION

### A.    Nelson's Motion to Dismiss for Lack of Personal Jurisdiction

Nelson moves to dismiss all claims against her under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.  When a defendant moves to dismiss a claim for lack of personal jurisdiction, the plaintiff bears the burden of proving that

personal jurisdiction exists.  *Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Nat. Gas Antitrust Litig.)*, 715 F.3d 716, 741 (9th Cir. 2013) (internal citations omitted).  Where the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  A court's duty is to inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction, accepting the plaintiff's allegations as true.  *Id.*  Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true.  Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.  *Id.*

To exercise personal jurisdiction over a non-resident defendant in a diversity case, a federal court must make the following determinations: (1) whether an applicable state rule or statute confers personal jurisdiction over the defendant; and (2) whether assertion of jurisdiction comports with constitutional principles of due process. *Data Disc Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 (9th Cir. 1977).  With respect to the first inquiry, this Court is bound to look to Montana law. *Haywood v. Travelers Indem. Co. of Am.*, 2006 WL 2860588, at *2 (D. Mont. October 3, 2006) (citations omitted).

The Montana Supreme Court has articulated a similar two-part test to determine the existence of personal jurisdiction: (1) the court must ascertain whether personal jurisdiction exists pursuant to Montana Rule of Civil Procedure 4(b)(1), Montana's long-arm statute; and (2) the court must assess whether asserting such jurisdiction is consistent with "traditional notions of fair play and substantial justice embodied in the due process clause." *Cimmaron Corp. v. Smith*, 67 P.3d 258, 260 (Mont. 2003) (*citing Threlkeld v. Colorado*, 16 P.3d 359, 361 (Mont. 2000)); *See also Simmons Oil Corp. v. Holly Corp.*, 796 P.2d 189, 193 (Mont. 1990).

Montana's long-arm statute provides in relevant part:

> All persons found within the state of Montana are subject to the jurisdiction of Montana courts. Additionally, any person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts:
> . . .
> (B)  the commission of any act resulting in accrual within Montana or a tort action[.][2]

Mont. R. Civ. P. 4(b)(1)(A)-(B).

The first sentence of Rule 4(b)(1) establishes the requirements for general jurisdiction. *Cimarron Corp.*, 67 P.3d at 260 (*citing Bi-Lo Foods Inc. v. Alpine Bank, Clifton*, 955 P.2d 154, 157 (Mont. 1998). "A court with general jurisdiction

---

[2] This is the only provisions of Rule 4(b)(1) that Plaintiffs argues the Court may exercise specific jurisdiction under.

16

may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different state." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 137 S.Ct. 1773, 1780 (2017) (emphasis in original).

The remainder of Rule 4(b)(1) establishes the requirements for specific jurisdiction. *Cimarron Corp.*, 67 P.3d at 260. In contrast to general jurisdiction, specific jurisdiction is more limited, and requires the controversy be directly related to the defendant's contacts with the forum. *Bristol-Myers*, 137 S.Ct. at 1780.

If the Court finds it may exercise specific jurisdiction under Mont. R. Civ. P. 4(b)(1), it must next determine whether such exercise is commensurate with the defendant's due process rights under federal law. *Bedrejo v. Triple E Can. Ltd.*, 984 P.2d 739, 742 (Mont. 1999) (*citing Simmons v. State*, 670 P.2d 1372, 1376–77 (Mont. 1983); *Grizzly Sec. Armored Express, Inc. v. Armored Group, LLC*, 255 P.3d 143, 149 (Mont. 2011)).

The Ninth Circuit has developed the following three-part test to assess whether the exercise of specific jurisdiction comports with due process:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and
> substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.[3]  "The plaintiff bears the burden of satisfying

the first two prongs of the test.  If the plaintiff fails to satisfy either of these prongs,

personal jurisdiction is not established in the forum state."  *Id.* (internal citations

omitted).

### 1.    General Jurisdiction

Nelson asserts there is no basis for exercising general jurisdiction over her

because she cannot be "found" in Montana.  Nelson states that she is not and never

has been a resident of Montana, and has never visited Montana.  Nelson does not

own, use or possess property or a property interest in Montana.  She is not licensed

to practice law in Montana, does not transact business in Montana, has not

contracted here, is not a director, manager or other officer of a corporation with

ties to Montana, and has never acted as a personal representative of any estate

within Montana.  (Doc. 40 at ¶ 14.)  The Ferchos do not dispute that there is no

basis for asserting general jurisdiction over Nelson.  Accordingly, the Court may

not exercise general jurisdiction over Nelson under Montana's long-arm statute.

/ / /

---

[3] The Montana Supreme Court adopted this approach in *Simmons Oil Corp*, 670
P.2d at 1378.

## 2.     Specific Jurisdiction

Nelson also argues she is not subject to specific jurisdiction.  Nelson contends none of the Ferchos' claims accrued in Montana.  She asserts the Ferchos' claims all arise from court proceedings the Ferchos commenced in Minnesota, and Nelson's conduct in Minnesota.  Specifically, Nelson argues the alleged injury-causing event – the Minnesota bench warrant – occurred in Minnesota.  Nelson states that, at most, she had communications with the Ferchos' attorneys and with Montana courts and law enforcement, but asserts interstate communications are not sufficient contacts to justify the exercise of personal jurisdiction.  Nelson further argues that even if there was a basis for asserting personal jurisdiction over her, exercising such jurisdiction would violate due process.

The Ferchos argue the Court may exercise specific jurisdiction over Nelson because she committed acts that resulted in the accrual of tort actions in Montana. The Ferchos argue the injury-causing event was not the issuance of the warrant in Minnesota, but rather was Mrs. Fercho's arrest in Montana.  The Ferchos, therefore, assert the elements of their tort claims did not accrue until Mrs. Fercho was arrested in Montana.  Further, the Ferchos assert Nelson directly involved herself in recruiting prosecutors and BIA agents in Montana to arrest Mrs. Fercho. Thus, the Ferchos argue Nelson has subjected herself to suit in Montana.

19

For the reasons set forth below, this Court finds Nelson is subject to specific jurisdiction.

> a.   Whether Personal Jurisdiction Exists Pursuant to Montana Rule of Civil Procedure 4(b)(1)(B) - Accrual of Tort Action in Montana

In assessing whether a claim accrued in Montana under Rule 4(b)(1)(B), the Court must focus "on where the events giving rise to the tort claims occurred, rather than where the plaintiffs allegedly experienced or learned of their injuries." *Tackett v. Duncan*, 334 P.3d 920, 928 (Mont. 2014).  "A tort does not accrue in Montana when all acts giving rise to the claims occur in another state." *Milky Whey, Inc. v. Diary Partners, LLC*, 342 P.3d 13, 18 (Mont. 2015).  The mere injury to a Montana resident is not a sufficient connection to the forum.  *Tackett*, 334 P.3d at 929.  *See also Cimmaron*, 67 P.3d at 261-62 (holding the fact the plaintiff was detrimentally affected within Montana by the defendant's actions in Pennsylvania was not sufficient to establish the accrual of a tort action within Montana).  Further, as made clear by the U.S. Supreme Court's opinion in *Walden v. Fiore*, 571 U.S. 277, 291 (2014), "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum state." *Id.*  The "mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.*

As discussed above, Nelson asserts the injury-causing event was the issuance of the warrant in Minnesota, and the Ferchos merely felt the injury in Montana when Mrs. Fercho was arrested.  The Ferchos disagree, arguing Mrs. Fercho was not injured by the warrant being issued in Minnesota.  They contend they were not injured until the warrant was executed in Montana.

The Court finds the injury-causing event was the execution of the warrant. The Ferchos do not contend that the issuance of the warrant constituted abuse of process.  In fact, they initiated the action in Minnesota, and do not appear to contend that the warrant was improperly issued.  Rather, Plaintiffs' claims are based on the execution of the warrant in Montana for the purpose of removing the children from the Tribal Court's jurisdiction.  Accordingly, the Court finds that the injury-causing event in the circumstances of this case was the execution of the warrant.  Thus, the Ferchos have sufficiently alleged actions resulting in the accrual of a tort in the state of Montana, and the Court finds it may exercise specific jurisdiction under Montana's long-arm statute.

  b. <u>Whether the Exercise of Specific Jurisdiction Comports with Due Process - Purposeful Direction</u>

The first requirement under the Ninth Circuit's due process test is purposeful direction of activities in the forum, or purposeful availment of the privilege of conducting business in the forum.  This requirement ensures that the defendant will not be "haled into a jurisdiction solely as a result of random, fortuitous, or

21

attenuated contacts . . . or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S 462, 475 (1985) (internal quotations and citations omitted).

For cases sounding in tort, the Ninth Circuit has generally applied the purposeful direction prong of this requirement, often referred to as the "effects test." *Axiom Foods, Inc. v. Acerchem International Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). Specifically, the test is appropriate in cases where the defendant's alleged tortious actions outside the forum state are directed at the forum. *Freestream Aircraft (Bermuda) Limited v. Aero Law Group*, 905 F.3d 597, 605 (9th Cir. 2018).

Under this test, "[t]he defendant must have '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* at 1069 (*quoting Marvix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1228 (9th Cir. 2011)). "[W]here acts are performed for the very purpose of having their consequences felt in the forum state, the forum will have personal jurisdiction over the actor." *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989). *See also Freestream Aircraft (Bermuda) Ltd.*, 905 F.3d at 605 (noting that under the effects test, "a defendant can be subject to personal jurisdiction based on 'intentional

conduct [outside the forum] calculated to cause injury to [a plaintiff] in [the forum].'") (*citing Calder v. Jones*, 465 U.S. 783, 791 (1984)).

### i.      *Intentional Act*

The intentional act prong requires an "intent to perform an actual, physical act in the real world." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015.)  Here, Nelson specifically emailed the warrant to Wind, told him that his department had jurisdiction to serve the warrants, and requested his assistance in executing the warrants and helping Lorenz re-take custody of the children.  Her emails indicate that she acted intentionally.  Therefore, the first prong of the effects test is satisfied.

### ii.     *Expressly Aimed*

The second prong of the test "asks whether the defendant's allegedly tortious action was 'expressly aimed at the forum.'" *Picot*, 780 F.3d at 1214.  With respect to this requirement, this case is substantially similar to *Lake v. Lake*, 817 F.2d 1416 (9th Cir. 1987).  There, a California attorney was representing a California mother in connection with a child custody dispute.  *Id.* at 1419.  The child and the father lived in Idaho.  *Id.*  The attorney procured an ex parte order from a California court on behalf of the mother awarding her temporary custody of the child.  *Id.* Thereafter, the mother and another individual went to Idaho, and used the ex parte

order to secure the assistance of local authorities to take custody of the child. *Id.*

Ultimately, the mother relinquished custody back to the father. *Id.*

Thereafter, the father filed a lawsuit in Idaho against the parties involved in

taking custody of the child, including the California attorney. *Id.* The California

attorney moved to dismiss for lack of personal jurisdiction. *Id.* The district court

granted the motion, but the Ninth Circuit reversed. *Id.* The Ninth Circuit found

the attorney's conduct in procuring the ex parte order with the intent that it be used

in Idaho was sufficient to establish personal jurisdiction. *Id.* at 1424.

The attorney in *Lake*, like Nelson here, argued his rendition of legal services

solely in one state was insufficient to subject him to personal jurisdiction in

another state. *Id.* at 1422. The Ninth Circuit disagreed. The court noted that the

attorney knew the father and child were in Idaho before he obtained the ex parte

order; he knew his client would take the order to Idaho to try to gain custody of

child; and he knew his client intended to use the order to obtain the assistance of

Idaho authorities. *Id.* at 1423. Therefore, the Ninth Circuit found the attorney

intentionally aimed his foreign act (obtaining the ex parte order) to have an effect

in the forum state. *Id.*

Likewise, here, Nelson knew Mrs. Fercho and the children were in Montana.

She had extensive contacts with Montana authorities, and attempted to enlist their

assistance in taking physical custody of the children. Her email communications

24

indicate that she specifically obtained the Minnesota warrant so that it could be used in Montana to regain custody of the children.  Further, she personally sent the Minnesota warrant into Montana for the purpose of having it executed in Montana. Accordingly, Nelson "intended a foreign act, obtaining the [Minnesota warrant], to have an effect in the forum state of [Montana]." *Lake*, 817 F.2d at 1423.  The Court thus finds the second requirement is satisfied.

### iii.   *Causing Harm*

Finally, under the third prong of the test, the defendant must know the harm is likely to be suffered in the forum state.  *Schwarzenegger*, 374 F.3d at 803.  Here, Nelson knew that Mrs. Fercho and the children were in Montana when she emailed the warrant to Wind.  As such, Nelson knew the effects of her actions would likely be felt in Montana.  Therefore, the third requirement of the effects test has been met.

### c.   Whether the Exercise of Specific Jurisdiction Comports with Due Process - Arising Out of Forum Related Activities

The next requirement of the Ninth Circuit's due process analysis is whether the claim arises out of or relates to the defendant's forum-related activities.  As the United States Supreme Court recently reiterated, in order for a court to exercise specific jurisdiction over a claim, "'the *suit* must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'"  *Bristol-Meyers*, 137 S.Ct. at 1781 (*quoting*

*Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (emphasis in original)).  *See also Walden*, 134 S. Ct. at 1121 (holding "the defendant's suit-related conduct must create a substantial connection with the forum State" to warrant specific jurisdiction).

Here, the Ferchos' claims against Nelson arise directly out of Nelson's contacts with the forum.  As recounted above, Nelson's emailing of the Minnesota warrant to Wind with the intention that it be executed in Montana is an integral and essential part of the alleged conspiracy upon which Plaintiffs base their claims against Nelson.  *See Lake*, 817 F.2d at 1423 (finding the second element of the due process test was satisfied because the father's claim against the California attorney directly arose out of the execution of the California ex parte order in Idaho).  The Court therefore finds the second element of the due process test is met.

      d.    Whether the Exercise of Specific Jurisdiction Comports with Due Process – Is Exercise of Jurisdiction Reasonable

The third requirement under the Ninth Circuit's due process analysis is whether the assertion the exercise of jurisdiction is reasonable.  Courts examine the following seven factors to determine if the exercise of jurisdiction comports with fair play and substantial justice: "(1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the

defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the

most efficient judicial resolution of the controversy; (6) the importance of the

forum to the plaintiff's interest in convenient and effective relief; and (7) the

existence of an alternative forum." *Dole Food, Inc. v. Watts*, 303 F.3d 1104, 1114

(9th Cir. 2002).  "None of the factors is dispositive in itself; instead, we must

balance all seven." *Core–Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1488 (9th

Cir. 1993).

The defendant bears the burden under the third prong "to 'present a

compelling case' that the exercise of jurisdiction would not be

reasonable." *Schwarzenegger*, 374 F.3d at 802.  The Court finds Nelson has not

made that showing here.

First, the Court has determined that Nelson purposefully directed her efforts

toward Montana when she emailed the Minnesota warrant to authorities in

Montana with the request to execute the warrant.  Second, the burden on Nelson to

litigate in Montana is not unusually heavy.  Although the Court recognizes

Montana may not be a convenient forum for Nelson, it is not constitutionally

unreasonable to require her to litigate here.  *See Panavision Int'l, LP v. Toeppen*,

141 F.3d 1316, 1323 (9th Cir. 1998) (stating that unless the "inconvenience is so

great as to constitute a deprivation of due process, it will not overcome clear

justifications for the exercise of jurisdiction" and noting that inconvenience is

27

mitigated by technology and discount travel).

Third, there is no issue with regard to a conflict with the sovereignty of Minnesota. This case does not involve the Minnesota court's jurisdiction over the custody dispute. As Plaintiffs have made clear, they are not asking this court to review Minnesota's custody determination. Nor do they contend that that the Minnesota warrant was improperly issued. Rather, the focus of this case is on the execution of the warrant in Montana. Fourth, Montana has a "significant interest in redressing injuries that actually occur within the State." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984). As the Court has already determined, the injury-causing event occurred in Montana.

Fifth, this case can be effectively litigated in Montana. This factor focuses on the location of evidence and witnesses. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). The majority of the witnesses in this case reside in Montana. Sixth, Montana provides convenient and effective relief for Plaintiffs. This factor does not weigh heavily in favor of Plaintiffs, however, because the Ninth Circuit does not "give[] much weight to inconvenience to the plaintiff." *Ziegler v. Indian River Cty.,* 64 F.3d 470, 476 (9th Cir. 1995).

Finally, it appears that an alternative forum may not exist because Plaintiffs' claims for unlawful seizure, abuse of process and infliction of emotional distress may be time-barred in Minnesota. *See* Minn. Stat. § 541.07; *Carijano v.*

28

*Occidental Petroleum Corp.*, 643 F.3d 1216, 1235 (9th Cir. 2011) ("[A]n adequate forum does not exist if a statute of limitations bars the bringing of the case in that forum.") (quoting *Bank of Credit and Commerce Int'l Ltd. v. State Bank of Pakistan,* 273 F.3d 241, 246 (2d Cir. 2001)).  Further, even if Minnesota's statute of limitations did not bar Plaintiffs' claims, "[t]he mere existence of an alternative forum . . . cannot possibly satisfy [the defendant's] burden to present a compelling case that jurisdiction is unreasonable." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001).

Accordingly, the Court finds that Nelson's Motion to Dismiss for lack of personal jurisdiction should be denied.

### B.    Nelson's Motion to Dismiss for Improper Venue

Nelson also argues venue is improper in this district under Rule 12(b)(3).

Under 28 U.S.C. § 1391, a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Venue is appropriate in this district under §1391(b)(2) because the "locus of injury" – namely Mrs. Fercho's arrest – occurred in Lame Deer, Montana.  *See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001).  Therefore, Nelson's motion to dismiss for improper venue should be denied.

### C.    Rieger's Motion to Dismiss for Failure to State a Claim

Rieger has filed a motion to dismiss Counts III – VII under Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *see also Chavez v. Bank of America, N.A.*, 2010 WL 1854087 at *4 (E.D. Cal. 2010) (summarizing the legal standard to be applied to Rule 12(b)(6) motions to dismiss).  "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

The Court evaluates Rule 12(b)(6) motions to dismiss in light of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  While "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted).  "[A] plaintiff's obligation to provide the grounds of his entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations and citations omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (citing *Twombly*, 550 U.S. at 570). A claim is plausible on its face when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The claim need not be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Facts that are "merely consistent with" a defendant's liability fall short of this standard. *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679.

The Court's review of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is generally confined to the pleadings. *Ritchie*, 342 F.3d at 907; *U.S. v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011). Nevertheless, the Court also may consider documents attached to the pleadings, and may consider documents

incorporated into the pleadings by reference.  *Ritchie*, 342 F.3d at 908.  Documents may be incorporated by reference where "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document."  *Corinthian Colleges*, 655 F.3d at 999.

### 1.   Conspiracy to Commit Abuse of Process (Count III)

Rieger argues prosecutorial immunity bars the Ferchos' claim of conspiracy to commit abuse of process insofar as it is based on her filing of the custodial interference charges in the Montana Seventh Judicial District Court.  Rieger further argues the claim fails as a matter of law because Mrs. Fercho's arrest was lawful.

The Ferchos counter that Rieger is not entitled to absolute immunity for her efforts to aid Mrs. Fercho's arrest.  The Ferchos also contend the Minnesota warrant was illegally executed in Montana because it was not based on a felony.

### a.   Prosecutorial Immunity

Prosecutors are immune from liability in civil actions arising from their performance of prosecutorial functions, even if the acts in question were committed in bad faith.  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Rosenthal v. Cty. of Madison*, 170 P.3d 493, 499 (Mont. 2007).  Courts take a functional approach to determining whether a given action is protected by prosecutorial immunity.  *Patterson v. Van Arsdel*, 883 F.3d 826, 830 (9th Cir. 2018); *Lacy v. Maricopa Cty.*, 693 F.3d 896, 912 (9th Cir. 2012) ("Immunity attaches to 'the

nature of the function performed, not the identity of the actor who performed it.'"). Acts of advocacy, which are those "intimately associated with the judicial phase of the criminal process," are entitled to absolute immunity. *Patterson*, 883 F.3d at 830. Whereas, administrative and "police-type" investigative acts are not. *Id.* Typically, the filing or dismissal of a criminal complaint fall with the scope of immunity. *Rosenthal*, 170 P.3d at 499. But a prosecutor is not entitled to absolute immunity for giving legal advice to police, *Burns v. Reed*, 500 U.S. 478, 492-96 (1991), or ordering or advising law enforcement to make an arrest. *Lacey*, 693 F.3d at 914.

Accordingly, Rieger is entitled to absolute immunity in this case for her actions related to the filing and dismissal of the custodial interference charge against Mrs. Fercho in the Montana Seventh Judicial District Court. Similarly, Rieger's actions in contacting the County Attorney in Rosebud County and asking her to review the matter, fall within the purview of her prosecutorial functions. Nevertheless, Rieger's other actions, such as providing the BIA with information on Mrs. Fercho's whereabouts, her photograph, and tribal enrollment records for the children; instructing the Dawson County sheriff to serve Mr. Fercho with the Minnesota court order and waive the process server fee; and instructing Nelson to contact the BIA and social services after the Minnesota bench warrant issued fell

33

"outside [her] core role as [a] courtroom advocate[]."  *Patterson*, 883 F.3d at 830.

Thus, absolute immunity does not attach to those actions.

Accordingly, the claim in Count III against Rieger should be dismissed to

the extent it is based on Rieger's filing of the custodial interference charge and

contacting the Rosebud County Attorney.

> b.   Lawfulness of Arrest

Rieger further asserts the Ferchos' abuse of process claim is based on the

premise that Mrs. Fercho's arrest was unlawful.  Rieger maintains the arrest was

lawful, and therefore asserts the Ferchos' abuse of process claim fails as a matter

of law.  The Ferchos counter that the arrest was unlawful under Montana law.

> i.   *Montana Law - Mont. Code Ann. § 46-6-210*

Under the general common law, an arrest warrant is not valid beyond the

boundaries of the issuing state, unless statutory authority provides otherwise.  *See*

5 Am.Jur.2d Arrest § 27 (2019); *People v. Wolgemuth*, 370 N.E.2d 1067, 1070 (Ill.

1977); *Ex parte Crawford*, 268 P. 871, 872 (Wash. 1928).  Montana has enacted

Mont. Code Ann. § 46-6-210, which establishes when a peace officer may make an

arrest pursuant to a warrant.

Section 46-6-210 provides:

> A peace officer may arrest a person when the officer has a warrant
> commanding that the person be arrested _or_ when the officer believes
> on reasonable grounds:

34

(1) that a warrant for the person's arrest has been issued in this state, except that unless otherwise provided by law, a warrant for violation of a city ordinance may not be acted upon unless the person is located within the limits of the city in which the violation is alleged to have occurred; or

(2) that a felony warrant for the person's arrest has been issued in another jurisdiction.

Mont. Code Ann. § 46-6-210 (emphasis added).

The Ferchos contend Mrs. Fercho's arrest was illegal under § 46-6-210 because the statute, read as a whole, prohibits the execution of an out-of-state warrant unless it involves a felony.  Rieger counters that only the first clause of the statute applies here, because Wind had an electronic copy of the Minnesota warrant.  She contends subsection (2), which limits the execution of out-of-state warrants to felonies, does not apply when the officer is in possession of the warrant.

The Montana Supreme Court has not considered § 46-6-210 in this context, and has not indicated whether the felony limitation on execution of out-of-state warrants applies in all instances, or only when the officer is acting on a reasonable belief that a warrant has been issued, rather than when the officer has the warrant. Under a plain reading of the statute, however, the felony limitation does not apply when an officer has possession of a warrant.

When interpreting a statute, a court is required to look to the plain meaning of the words.  *Clarke v. Massey*, 897 P.2d 1085, 1088 (Mont. 1995).  A court will

only resort to the legislative history of a statute if the legislative intent cannot be determined from the statute's plain wording.  *Id.*  "[T]he office of judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted."  Mont. Code Ann. § 1-2-101.

Under the plain language of §46-6-201, an officer may make an arrest when either: (1) the officer has a warrant commanding that the person be arrested; or (2) the officer reasonably believes a warrant has been issued for the person's arrest. Under the second circumstance, the statute imposes further limitations.  Where the officer is acting on a reasonable belief, the statute limits arrests on out-of-state warrants to felony offenses.  There is simply no indication that the first clause of the statute – before the first disjunctive "or" – is also limited to the execution of felony warrants only.  Therefore, construing the text as written, § 46-6-210 broadly permits an officer to make an arrest on the basis of an out-of-state misdemeanor warrant as long as "the officer has a warrant."  Mont. Code Ann. § 46-6-210.

Here, Wind had an electronic copy of the Minnesota warrant when he arrested Mrs. Fercho.  Therefore, he had authority to arrest her on the warrant, regardless of whether it was for a felony, pursuant to the first clause of § 46-6-201. As such, the Court finds Mrs. Fercho's arrest was not illegal under §46-6-210.

/ / /

36

ii.     *Uniform Criminal Extradition Act*

The Ferchos also argue, however, that Mrs. Fercho's arrest violated the

Uniform Criminal Extradition Act ("UCEA").  Rieger counters that the UCEA is

inapplicable in this case.

Montana has codified the UCEA in Title 46, Chapter 30 of the Montana

Code Annotated.  The Ferchos specifically rely on § 46-3-301 of the Act, which is

entitled "Arrest of accused without warrant" and provides:

> The arrest of a person may also be lawfully made by any peace officer
> or a private person *without a warrant* upon reasonable information
> that the accused stands charged in the courts of a state with a crime
> punishable by death or imprisonment for a term of 1 year or more.
> When arrested under this section, the accused must be taken before a
> judge or magistrate with all practicable speed and complaint must be
> made against the accused under oath setting forth the ground for the
> arrest as provided in 46-30-227. After the complaint is made, the
> accused's answer must be heard as if the accused had been arrested on
> a warrant.

Mont. Code Ann. § 46-30-301 (emphasis added).

A violation of the UCEA is actionable under § 1983.  *Draper v. Coombs*,

792 F.2d 915, 919-20 (9th Cir. 1986).  Nevertheless, the UCEA is not applicable

here, because Mrs. Fercho was not arrested "without a warrant."  By its terms, §

46-3-301 only applies to the arrest of a person without a warrant.

Furthermore, even if § 46-3-301 were to apply, the ability to extradite does

not necessarily determine the lawfulness of the arrest.  *See e.g. People v.*

*Thompson*, 793 P.2d 1173, 1176 (Colo. 1990) (noting that an "outstanding arrest

37

warrant from another jurisdiction is normally sufficient in itself to provide the probable cause needed to make an arrest," and holding that a "no extradition" provision in a warrant did not invalidate the arrest of a fugitive in the asylum jurisdiction).

In sum, the Court finds Mrs. Fercho's arrest was not unlawful under Montana law. This does not mean, however, that the Ferchos' abuse of process claim necessarily fails as a matter of law.

### c. Abuse of Process

Under Montana law, a plaintiff alleging abuse of process must prove: (1) "a willful use of process not proper in the regular conduct of the proceeding;" and (2) "that the process was used for an ulterior purpose." *Spoja v. White*, 317 P.3d 153, 157 (Mont. 2014). The legal process itself does not have to be unlawful to support an abuse of process claim. Rather, "[t]he legal process must be 'put to a use perverted beyond its intended purpose.'" *Salminen v. Morrison & Frampton, PLLP*, 339 P.3d 602, 610 (Mont. 2014) citing *Brault v. Smith,* 679 P.2d 236, 240 (1984). The Montana Supreme Court has explained that "[a]n abuse of process may occur when a party uses process to coerce another to 'do some collateral thing [that he] could not be legally and regularly compelled to do.'" *Id.* citing *Judd v. Burlington Northern,* 186 P.3d 214. 217 (Mont. 2008).

In *Hopper v. Drysdale,* 524 F.Supp. 1039 (D. Mont. 1981), for example, the court found the plaintiff had stated a claim for abuse of process where the defendants had legally subpoenaed him to appear at a deposition in one case so that he could be arrested on a contempt citation that had been issued in a separate case. In *Hopper*, neither the deposition notice, nor the arrest warrant, were unlawfully issued. *Id.* at 1042. Rather, the issue was whether the plaintiff's deposition had been noticed for an ulterior motive. *Id.* The court determined that the plaintiff had alleged the essential elements of the tort of abuse of process. The court stated however, that whether the defendants' conduct in fact constituted abuse of process was "factual in nature and hence, remains to be determined by the trier of fact." *Id.* at 1042.

Likewise, here, the Court finds the Ferchos have plausibly alleged an abuse of process claim. The Ferchos allege Rieger, in concert with the other Defendants, used process (the Minnesota warrant) for the ulterior purpose of removing the children from the Tribal Court's jurisdiction. Thus, even if the warrant was lawfully obtained, and Mrs. Fercho was lawfully arrested, if the warrant was used for the ulterior purpose of having Mrs. Fercho arrested so the children could be taken from the jurisdiction of the Tribal Court, the Ferchos have stated plausible claim for abuse of process.

39

The Court cautions, however, that it does not find Rieger or the other Defendants did, in fact, abuse process.  Rather, the Court is only finding that at this stage of the proceedings, under the applicable Rule 12(b)(6) standard, that the Ferchos have stated a plausible claim for relief.  As such, the Court does not find dismissal of the abuse of process claim is appropriate at this early stage of the proceedings

Accordingly, Rieger's motion to dismiss should be denied as to Count III to the extent it is based on her actions in relation to the Minnesota warrant.

### 2.      Constitutional Claims (Counts IV and V)

Rieger argues she is entitled to qualified immunity on the Ferchos' federal and state constitutional claims, and moves to dismiss Counts IV and V.  The Ferchos counter that Rieger is not entitled to qualified immunity.

#### a.      Seizure in Violation of the U.S. Constitution (Count IV)

Qualified immunity shields federal and state officials from civil liability under § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "To determine whether an officer is entitled to qualified immunity, a court must evaluate two independent questions: (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident."  *Castro v. County of Los*

*Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016). The Court has discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) *citing Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012). In this regard, the Supreme Court has cautioned that clearly established law should not be defined at a high level of generality. *Id.* The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* It is not necessary to find a case directly on point, "in which the very action in question has been held unlawful," but "in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id. citing Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Thus, the issue is whether it would have been clear to a reasonable prosecutor in Rieger's position, that her conduct was unlawful in the situation she was confronted with.

/ / /

/ / /

i.     *Uniform Criminal Extradition Act*

The Ferchos argue that at the time of Mrs. Fercho's arrest, it was clearly established under the UCEA that an out-of-state warrant could only be executed if it was for a felony.  The Ferchos further argue that no reasonable officer standing in Wind or Rieger's shoes could have believed Mrs. Fercho was charged with a felony in Minnesota.  Thus, they contend her arrest violated the UCEA, and Rieger is not entitled to qualified immunity.

As discussed above, however, the UCEA provision the Ferchos rely upon is not applicable because Mrs. Fercho was not arrested without a warrant.  Further, as discussed, Mrs. Fercho's arrest was lawful under the plain language of Mont Code Ann. § 46-6-201.

The Court further notes that law enforcement officers may constitutionally execute out-of-state warrants.  *See e.g. United States v. Frank*, 8 F. Supp. 2d 284, 300 (S.D.N.Y. 1998) (rejecting argument "that an arrest on an out-of-state misdemeanor warrant without more violates the Fourth Amendment.  To the contrary, arresting an individual in reliance on the existence of a warrant for that person's arrest issued by a judicial officer (even one from a different state) is inherently reasonable."); *Case v. Kitsap Cty. Sheriff's Dept.*, 249 F.3d 921 (9th Cir. 2001); *Hauck v. Walker*, 651 F. App'x 576 (9th Cir. 2016).

42

Moreover, bench warrants and civil contempt warrants are not considered inferior warrants.  They stand on equal footing with criminal warrants.  *See e.g. United States v. Gooch*, 506 F.3d 1156, 1159 (9th Cir. 2007) (stating the interests of the Fourth Amendment "are sufficiently safeguarded when an entry is premised on the execution of a valid arrest warrant issued by a judge or magistrate, regardless of whether that warrant is for a felony, a misdemeanor, or simply a bench warrant for failure to appear."); *United States v. Phillips*, 834 F.3d 1176, 1181-82 (11th Cir. 2016) ("[A]rrests based on bench warrants satisfy the Fourth Amendment . . . even when the bench warrant is based on *civil* contempt."); *United States v. Phillips*, 2014 WL 12640944, *6 (S.D. Fla. July 8, 2014) ("For Fourth Amendment purposes, the authority of law enforcement officers to make an arrest on a public street pursuant to a civil writ is no different from that under a felony warrant."); *United States v. Collins*, 359 F. App'x 639, 641 (6th Cir. 2010) ("There is no legal support we know of, and [the defendant] cites none, for the proposition that a bench warrant issued for contempt of court is fundamentally different, under the Fourth Amendment, than an arrest warrant for a felony.").

Therefore, the Court finds Mrs. Fercho's arrest did not violate the Fourth Amendment.  But even if her arrest was unlawful, the Court finds Montana law was not clearly established at the time of her arrest.  As noted above, in light of the plain language of §§ 46-3-301 and 46-6-201, the Court finds it would not have

been apparent to Rieger or the other Defendants that Mrs. Fercho's arrest was unlawful.

ii.   *Warrant Lacked Probable Cause*

The Ferchos also argue it was clearly established in November 2015 that executing an out-of-state warrant lacking indicia of probable cause violated the Fourth Amendment.  They assert a reasonable official would have known that it was unlawful to arrest Mrs. Fercho because the Minnesota warrant lacked probable cause that Mrs. Fercho had committed a crime.

"An arrest pursuant to a facially valid warrant does not establish a constitutional violation."  *Valdez v. Linder*, 2010 WL 378354, *1 (D. Mont. Feb. 1, 2010) (citing *Baker v. McCollan*, 443 U.S. 137, 144 (1979).  Generally, where an arresting officer has a reasonable, good faith belief that he is acting pursuant to a properly issued warrant, the arrest is not unconstitutional.  *Id.* at *4.  *See also Erdman v. Cochise Cty., Ariz.*, 926 F.2d 877, 882 (9th Cir. 1991) (holding arrest was not unconstitutional because it was made pursuant to a facially valid bench warrant); *Manning v. Basey*, 541 F. Appx. 742, 743 (9th Cir. 2013) (recognizing "an arrest based on a facially valid warrant is insufficient" to state a Fourth Amendment claim); *In re Roberts Litig.*, 693 F. Appx. 630, 631 (9th Cir. 2017) ("Because the BIA Officers did not violate clearly established constitutional law when they arrested [plaintiff] pursuant to a facially valid warrant issued by the

44

tribal court, they are entitled to qualified immunity.  The officers' good faith reliance on the facially valid warrant was not unreasonable.").

In this case, the Minnesota warrant was issued pursuant to the Minnesota court's determination that Mrs. Fercho failed to obey the order of the court to appear for a show cause hearing.  The arresting officers were entitled to rely on that determination.  "Officers are entitled to rely on an issuing judge's decision that probable cause exists, and will be shielded from any liability relating to the arrest if they relied on the judge's decision in good faith."  *Valdez*, 2010 WL 378354 at *1.

Further, at least one court has found an arrest on a facially valid civil contempt warrant did not violate a clearly established right.  In *Ferguson v. United States*, 2016 WL 4793180 (S.D. Cal. Sept. 14, 2016), the court found three deputy U.S. Marshals were entitled to qualified immunity where they had arrested the plaintiff in California under a warrant for civil contempt that had been issued by a court in Michigan.  The court noted that the arrest warrant was issued on a criminal form and captioned "United States of America v. Merle Ferguson," the warrant did not contain any geographical limitation, and it commanded "any authorized law enforcement officer" to arrest the plaintiff.  *Id.* at *4-5.  The Court determined the warrant was facially valid, and there was no precedent that would have required the deputies to conduct an independent investigation into the warrant before enforcing it.  *Id.* at 5.

45

The Minnesota warrant in this case was similarly captioned "State of Minnesota v. Patsy Fercho." (Doc. 40 at 172.) It also directed any "person authorized by law to execute this warrant." (*Id.*) And it did not contain a jurisdictional limitation; the section of the form which stated "Execute in Minnesota only" was not checked. (*Id.*) Therefore, the Court finds Mrs. Fercho was arrested on a facially valid warrant.

Accordingly, Rieger is entitled to qualified immunity for the alleged violation of Mrs. Fercho's rights under the Fourth Amendment of the United States Constitution. Rieger's motion to dismiss Count IV should be granted.

> b.   Seizure in Violation of Montana Constitution (Count V)

The Montana Supreme Court has held that qualified immunity does not apply to claims arising from the Montana Constitution. *Dowart v. Caraway*, 58 P.3d 128, 140 (Mont. 2002.) Accordingly, Rieger is not entitled to qualified immunity on the Plaintiffs' state constitutional claim. Nevertheless, the Court finds the claim fails as a matter of law because, as discussed above, Mrs. Fercho's arrest did not violate Montana law.

Accordingly, Rieger's motion to dismiss Count V should be granted.

### 3.   Intentional Infliction of Emotional Distress (Count VI)

Rieger argues Mrs. Fercho's claim for intentional infliction of emotional distress should be dismissed because the factual allegations in the Second

Amended Complaint fail to cross the threshold of severe or serious emotional distress.  The Ferchos counter that the allegations are sufficient to withstand a motion to dismiss.

Montana law recognizes an independent cause of action for infliction of emotional distress "under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent or intentional act or omission."  *Sacco v. High Country Ind. Press., Inc.*, 896 P.2d 411, 429 (Mont. 1995).  Rieger is correct that Mrs. Fercho must ultimately satisfy a strict standard of evidentiary proof to succeed on her emotional distress claim.  She will be required to establish that the emotional distress she suffered was "so severe that no reasonable person could be expected to endure it." *Feller v. First Interstate Bancsystem, Inc.*, 299 P.3d 338, 344 (Mont. 2013).  The Montana Supreme Court has clarified, however, that "[i]n cases where there is physical manifestation of bodily harm resulting from emotional distress, such as PTSD, this bodily harm is sufficient evidence that the emotional distress suffered by the plaintiff is genuine and severe."  *Henricksen v. State*, 84 P.3d 38, 55 (Mont. 2004).  Quoting from the Restatement (Second) of Torts, § 46, comment k., the court explained "'[n]ormally, severe emotional distress is accompanied or followed by shock, illness, or other bodily harm, which *in itself* affords evidence that the distress is genuine and severe." (Emphasis belongs to the court.)  *Id.*

47

The Court will initially determine whether the threshold level of emotional distress can be found.  *Sacco*, 896 P.2d at 425.  If so, "it is for the jury to determine whether, on the evidence, it has in fact existed."  *Id.*  At this stage of the proceedings, however, Mrs. Fercho need only allege facts to plausibly support the claim that she has suffered serious or severe emotional distress, and the Court must draw all reasonable inferences from the facts in her favor.  *Gen. Conf. Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir.1989).

In her Second Amended Complaint, Mrs. Fercho alleges she suffered "humiliation, pain and suffering, and severe emotional distress."  (Doc. 1 at ¶ 267.)  While these conclusory allegations alone would not be sufficient to state a claim, she has also alleged that she experienced physical manifestation of her emotional distress.  She alleges that during her arrest, she "became so terrified she vomited."  (*Id.* at ¶ 191.)  Mrs. Fercho does not allege any additional facts regarding the duration and intensity of her emotional distress, which are important factors to be considered.  See *Feller*, 299 P.3d at 345.  Nevertheless, the allegations of the Second Amended Complaint that she suffered severe emotional distress, together with factual allegations demonstrating physical manifestation of the distress, are sufficient at this early stage to state a plausible claim for intentional infliction of emotional distress.  It remains to be determined, of course, whether the Ferchos

can produce sufficient evidence to meet the high bar of severe or serious emotional distress to present a viable claim as this case proceeds.

Accordingly, Rieger's motion to dismiss Count VI should be denied.

### 4.      Loss of Consortium (Count VII)

Rieger contends Mr. Fercho is not entitled to loss of consortium damages for two reasons.  First, she asserts there is no constitutionally protected right of marital integrity and spousal association cognizable under § 1983.  Second, she argues Mr. Fercho's derivative consortium claim fails because Mrs. Fercho has not stated a viable state law claim against Rieger.  In response, the Ferchos concede that Mr. Fercho's claim cannot be derived from § 1983.  The Ferchos maintain, however, that Mrs. Fercho's state law claims are viable, and thus, Mr. Fercho's loss of consortium claim is valid.

Under Montana law, an independent cause of action for loss of consortium is derivative in nature in that the theory of recovery "is derivative as to liability." *Mickelson v. Montana Rail Link*, 999 P.2d 985, 1003 (Mont. 2000).  This means that "[t]he success of [the deprived spouse's] claim depend[s] on the success of [the impaired spouse's] claim for personal injuries against the [defendant]." *Hunsaker v. Bozeman Deaconess Foundation*, 588 P.2d 493, 501 (1978).  Thus, if the injured spouse's claim is barred, then the deprived spouse's loss of consortium claim is also barred.  *Mickelson*, 999 P.2d at 1003.  On the other hand, if liability to

49

the impaired spouse is established, a deprived spouse's recovery is "independent as to damages."  *Id.*

As discussed above, Mrs. Fercho has stated claims for abuse of process and intentional infliction of emotional distress.  Therefore, Rieger's motion to dismiss Mr. Fercho's derivative claim for loss of consortium should be denied.

## III.   CONCLUSION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.     Nelson's Motion to Dismiss (Doc. 38) be **DENIED**;

2.     Rieger's Motion to Dismiss (Doc. 44) be **GRANTED in part and DENIED in part**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 1st day of August, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge