

FILED

JAN 0 9 2020

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

PATSY FERCHO; ALLEN FERCHO,

Plaintiffs,

vs.

UNITED STATES OF AMERICA;
JENNY L. NELSON; OLIVIA
RIEGER; ERIC BARNOSKY;
DONOVAN WIND,

Defendants.

CV 18–86–BLG–DLC–TJC

ORDER

Magistrate Judge Timothy J. Cavan entered a Findings and

Recommendation in this matter on August 10, 2019, recommending that the Court

deny the motion to dismiss of Defendant Jenny L. Nelson and grant in part and

deny in part the motion to dismiss of Defendant Olivia Rieger. (Doc. 74.) Nelson

timely filed objections, as did Plaintiffs Patsy and Allen Fercho. (Docs. 77 & 78.)

Consequently, the parties are entitled to de novo review of those findings and

recommendations to which they have specifically objected. 28 U.S.C. § 636(b)(1).

Absent objection, this Court reviews findings and recommendations for clear error.

*See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc);

*Thomas v. Arn*, 474 U.S. 140, 149 (1985). Clear error exists if the Court is left

1

with a "definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citations omitted).

Judge Cavan recommended that the Court deny Nelson's motion to dismiss for lack of personal jurisdiction and improper venue. He found the constitutional and statutory requirements for jurisdiction were met when Nelson worked to effectuate Patsy Fercho's arrest within Montana, even though Nelson did not physically leave Minnesota. He also found that venue is proper because the Ferchos' claims arise from that arrest. Nelson objects broadly to Judge Cavan's recitation of the facts and to his recommendation to deny her motion, and so the Court reviews de novo. It agrees with and adopts Judge Cavan's recommendation.

Judge Cavan also recommended that the Court grant in part and deny in part Rieger's motion to dismiss for failure to state a claim. He determined that Rieger was entitled to dismissal of: (a) Count III (conspiracy to commit abuse of process), but only to the degree that it is premised in Rieger's performance of prosecutorial functions; (b) Count IV (seizure in violation of the U.S. Constitution); and (c) Count V (seizure in violation of the Montana Constitution). Judge Cavan recommended the Court deny the motion to dismiss as to: (a) Count III, to the degree that it is based on Rieger's actions unrelated to her performance of prosecutorial functions; (b) Count VI (intentional infliction of emotional distress); and Count VII (loss of consortium).

Rieger did not object to the Findings and Recommendation, but the Ferchos did, objecting only to Judge Cavan's recommendation to dismiss Count V. Additionally, Nelson objects to Judge Cavan's determination that Count III (conspiracy to commit abuse of process) survives, except to the degree it arises from Rieger's performance of professional prosecutorial duties. Because Nelson did not address Count III in her motion to dismiss (and Rieger's legal arguments are distinguishable, given that she relied in large part on prosecutorial immunity), the Court does not address Nelson's objection to the Findings and Recommendation regarding Rieger's motion to dismiss.[1] Thus, the Court reviews the sufficiency of the Complaint as to Count V de novo and otherwise reviews for clear error. Applying these standards, it adopts the Findings and Recommendation in full.

## BACKGROUND

In his Findings and Recommendation, Judge Cavan set forth a thorough factual background, accepting as true the allegations of the Complaint. (Doc. 74 at 2–14.) Nelson objects to Judge Cavan's recitation of the facts, arguing that

---

[1] In any event, Nelson's objection is unfounded. She argues that there can be no abuse of process because the warrant expressly provided for the return of the children to Lorenz's custody, contradicting Judge Cavan's finding that "[t]he Ferchos allege [Defendants] used process (the Minnesota warrant) for the ulterior purpose of removing the children from the Tribal Court's jurisdiction." (Docs. 74 at 39, 77 at 5–6.) However, the Minnesota warrant, on its face, does not prove that the defendants did not use the Minnesota court proceeding for the improper purpose of subverting the Tribal Court custody order.

3

because she filed a motion to dismiss for lack of personal jurisdiction "only 'uncontroverted facts must be taken as true.'" (Doc. 77 at 2 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).) She further argues that the Court erred by failing to accept as true the factual findings made by the Montana Seventh Judicial District Court and the Third Judicial District Court in Olmsted County, Minnesota, even though Judge Cavan took judicial notice of the documents setting forth those findings. (Doc. 77 at 2.)

Nelson misunderstands the role of the Court in this early stage of litigation. Even under Rule 12(b)(2), "[c]onflicts between parties . . . must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800. Moreover, the facts challenged by Nelson are not jurisdictional but instead go to the heart of the merits, and the Court must accept as true the plaintiff's allegations in its analysis of whether a plaintiff has stated a claim for relief. *Wyler Summit P'ship v. Turner Broadcasting Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). Nelson has not directly challenged the allegations relevant to jurisdiction.

Moreover, Nelson's argument—that the Court must adopt as true the factual findings made by state courts in Montana and Minnesota because it has taken judicial notice of the existence of state court orders—cannot succeed. "On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the

4

existence of the opinion, which is not subject to reasonable dispute over its authenticity.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426–27 (3d Cir. 1999)). Setting aside that Nelson's objections focus on the merits of the case rather than the initial jurisdictional inquiry, Nelson does not argue—and the Court finds no reason to conclude—that the rule discussed in *Lee* does not apply similarly in the context of a 12(b)(2) motion.

Thus, for purposes of this Order, the Court incorporates the factual background set forth in the Findings and Recommendation, overruling Nelson's objection. Rather than recite the same facts here, the Court will provide only a truncated overview as context for this Order, with the caveat that the facts outlined here, taken from the Second Amended Complaint, are not binding on the parties and have no bearing on future disputes within this proceeding.

Plaintiffs Patsy and Allen Fercho are grandparents to two children, E.L. and L.L., and this action arises from a custody dispute between the Ferchos and Dereck Lorenz, the birth father of the children, fueled in part by inconsistent custody orders issued by the Northern Cheyenne Tribal Court and state courts in Montana and Minnesota. A state court in Dawson County, Montana awarded custody to Lorenz in 2014. In the summer of 2015, Patsy Fercho petitioned for custody in Olmstead County, Minnesota (where Lorenz and the children were living) and,

three days later, in the Tribal Court. In the fall of 2015, the Tribal Court awarded first emergency guardianship and later full custody to Fercho. Fercho gained physical custody of the children on September 16, 2015, with the aid of sheriff's deputies in Minnesota. Shortly after, Lorenz filed a new proceeding in Dawson County, Montana, which resulted in an award of temporary custody to Lorenz on October 5, 2015. Fercho did not comply with the Dawson County order and instead took the children to a church within the boundaries of the Northern Cheyenne Reservation, where Fercho and the children lived in a trailer.

Meanwhile, in Minnesota, Defendant Nelson, an attorney, was representing Lorenz in the Olmstead County proceeding, which remained open throughout this period. Nelson worked tirelessly at returning the children to their father's care by, among other things, contacting various prosecutors in an attempt to have Fercho arrested. Due to the Tribal Court order and jurisdictional complications, most were not willing to help. But Nelson eventually found an ally in Defendant Rieger, Dawson County Attorney, who filed charges against and obtained an arrest warrant for Patsy Fercho on October 7, 2015. Those charges were later dismissed, and the warrant was quashed, but Rieger and Nelson continued to email each other and various other lawyers and law enforcement officers about how to arrest Fercho and get the children back to Lorenz.

6

Custody hearings were held over the next few days in the Montana and Minnesota state courts, and the outcomes of those proceedings were favorable to Lorenz. (Patsy Fercho remained firmly within the Reservation and did not attend these proceedings either personally or through counsel.) Through Nelson, Lorenz filed a motion for contempt on October 20, 2015. When Fercho failed to appear at the ensuing show cause hearing on November 20, 2015, the Minnesota state court issued a bench warrant for Patsy Fercho's arrest, which also provided that the children must be returned to Lorenz. On November 21, 2015, following considerable urging from Rieger and Nelson, Bureau of Indian Affairs agents Molanna Clifford and Donovan Wind[2] arrested Fercho at the church and separated her from the children, who are now in Lorenz's care. Fercho was in Wind's vehicle for approximately an hour, but she was returned to the church when Wind learned that the Minnesota court would not seek extradition.

## DISCUSSION

Both Nelson and the Ferchos object to the Findings and Recommendation. The Court overrules all objections, adopting the recommendations to deny Nelson's 12(b)(2) and (3) motion and to grant in part and deny in part Rieger's 12(b)(6) motion.

---

[2] In addition to being a federal agent, Wind was Chief of Police for Lame Deer, Montana, which falls within the Northern Cheyenne Reservation.

## I. Nelson's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue

Nelson moved to dismiss on the grounds of lack of jurisdiction and improper venue. The due process considerations of "fair play and substantial justice" require a defendant to "have certain minimum contacts" with a forum state before a court seated in that state may exercise jurisdiction over the defendant. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "*International Shoe's* conception of 'fair play and substantial justice' presaged the development of two categories of personal jurisdiction"—general and specific. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). Judge Cavan found that Nelson is not subject to general jurisdiction in Montana. (Doc. 74 at 18.) There is no objection to this determination, and it is not clearly erroneous. Accordingly, the issue is whether Nelson's conduct relevant to this proceeding gives rise to specific jurisdiction.

"Personal jurisdiction over a nonresident defendant is proper if permitted by [the forum] state's long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013). Montana's long-arm statute authorizes jurisdiction over a person who "commi[ts] . . . any act resulting in accrual within Montana of a tort action" as to that tort action. Mont. R. Civ. P. 4(b)(1)(B).

Provided that the forum state's long-arm statute is satisfied, the Ninth

Circuit has developed a three-part test to determine whether the exercise of

jurisdiction comports with the requirements of the U.S. Constitution:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)

(quoting *Lake v. Lake.* 817 F.2d 1416, 1421 (9th Cir. 1987)).

Even where jurisdiction exists, a defendant may still be entitled to dismissal

on the grounds of improper venue. A civil action may only be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

### A. Long-Arm Jurisdiction

As relevant here, Montana's long-arm statute provides that jurisdiction may be found over a defendant if the tort "accru[es] within Montana." Mont. R. Civ. P. 4(b)(1)(B). Although the statute imposes no requirement that the defendant act within Montana, the Montana Supreme Court has read the accrual provision to include a requirement that defendant have some form of contact with the state. *See Ascencio v. Phillips Agency, Inc.*, 2016 WL 9461796, at *3–4 (D. Mont. Aug. 16, 2016); *see also Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 18 (Mont. 2015) ("[A] tort does not accrue in Montana when all acts giving rise to the claims occur in another state."). Thus, "to determine the place of accrual, Montana looks not to the location of the injury but to the location of the injury-causing event." *Ascencio*, 2016 WL 9461796, at *4.

Judge Cavan determined that long-arm jurisdiction exists because "the injury-causing event was the execution of the warrant," which occurred within Montana. Nelson objects on the grounds that "there was no accrual of a tort in Montana" because "the arrest was legal and the warrant was properly executed." (Doc. 77 at 5.) However, whether the Ferchos have failed to state a claim upon which relief can be granted presents an entirely different question from whether jurisdiction is appropriate. *See* Fed. R. Civ. P. 12(b)(2), (6). The Court agrees

10

fully with Judge Cavan's analysis, and it finds that the relevant tort "accru[ed] in Montana" when Nelson contacted Montana prosecutors and law enforcement agents for the clear purpose of effectuating Patsy Fercho's arrest in Lame Deer, Montana.

## B. Constitutionality

As a preliminary matter, some of Nelson's arguments against jurisdiction must be rejected on the grounds that they are not relevant to the Court's analysis under Rule 12(b)(2) but instead relate to the sufficiency of Ferchos' allegations. Nelson argues that personal jurisdiction does not exist because there was no illegal arrest in Montana, and therefore no tort to accrue in Montana. (Doc. 77 at 4–5.) She similarly claims that, because the warrant and arrest were legal, "Plaintiffs could not have suffered harm," and Nelson therefore could not have anticipated that the Ferchos would be harmed in Montana. This is not the proper analysis, though; Nelson conflates the merits of the Ferchos' claim with the constitutionality of jurisdiction. To the degree that her objection is premised in an argument that the Ferchos have failed to state a claim upon which relief may be granted, Nelson's objection is overruled.

Instead, the Court turns to the constitutional analysis developed in the Ninth Circuit for purposes of analyzing personal jurisdiction in tort actions. The

11

framework, correctly laid out in the Findings and Recommendation and quoted above, *see supra* p. 9, has three components: (1) purposeful direction; (2) nexus between forum-related activities and accrual of the tort; and (3) reasonableness. *Schwarzenegger*, 374 F.3d at 802

### 1. Purposeful Direction

Because a defendant may not be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), a defendant who acts outside of the forum state may be subject to jurisdiction within the state only if the defendant's actions are directed at the state, *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir. 2018). The standard is met if the defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom Foods v. Acerchem Int'l Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (quoting *Marvix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011)).

Judge Cavan found the purposeful direction requirement met because: (1) Nelson committed the intentional act of "email[ing] the warrant to Wind, t[elling] him that his department had jurisdiction to serve the warrants, and request[ing] his assistance in executing the warrants and helping Lorenz re-take custody of the

12

children" (Doc. 74 at 23); (2) that this act was expressly aimed at Montana because "she specifically obtained the Minnesota warrant so that it could be used in Montana to regain custody of the children" and "she personally sent the Minnesota warrant into Montana for the purpose of having it executed in Montana" (Doc. 74 at 25); and (3) Nelson knew that the Ferchos would be harmed in Montana because she "knew that Mrs. Fercho and the children were in Montana when she emailed the warrant to Wind" (Doc. 74 at 25).

Nelson argues that she did not purposefully direct her activities toward Montana because the Minnesota warrant would have formed the basis for an arrest in any state, and Patsy alone is responsible for its execution in Montana because Patsy chose to be in that state. (Doc. 77 at 6–8.) She contends that "[j]ust because the arrest warrant was ultimately executed in Montana where Plaintiffs happened to be does not mean Ms. Nelson's actions were expressly aimed at Montana." (Doc. 77 at 8.) This argument is disingenuous. Nelson knew that the Ferchos were in Montana, and she reached out to prosecutors and law enforcement officers in Montana in her effort to secure Patsy Fercho's arrest in Montana. *See Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989) ("[W]here acts are performed for the very purpose of having their consequences felt in the forum state, the forum will have personal jurisdiction over the actor.").

Like Judge Cavan, the Court finds that Nelson's conduct was purposefully directed at Montana. Indeed, the facts of this case are remarkably close to those discussed in *Lake v. Lake*, 817 F.2d 1416, 1423 (9th Cir. 1987), in which the Ninth Circuit found jurisdiction in Idaho over a California attorney because the attorney "knew that [the plaintiffs] were in Idaho . . . when he obtained the ex parte [custody] order in California" and that the order would be "used . . . to obtain the assistance of the appropriate authorities [in Idaho]." Given the attorney's knowledge that the California custody order would be used to remove a child from the plaintiffs' home in Idaho, the Court determined that the attorney's actions were taken "for the very purpose of having their consequence felt in the forum state." *Id.* (quoting *Wright v. Yackley*, 459 F.2d 287, 290 (9th Cir. 1972)).

### 2. Nexus

Jurisdiction cannot be found if a suit does not "arise[] out of or relate[] to the defendant's contacts with the forum." *DaimlerAG*, 571 U.S. at 127 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Judge Cavan determined that "Nelson's emailing of the Minnesota warrant to Wind with the intention that it be executed in Montana is an integral and essential part of the alleged conspiracy upon which Plaintiffs base their claims against Nelson." (Doc. 74 at 26.) Thus, he found the nexus requirement satisfied. Nelson

14

does not object to this determination, and the Court agrees with Judge Cavan's analysis.

### 3. Reasonableness

Finally, the exercise of jurisdiction must be reasonable, that is it must be consistent with traditional notions of "fair play and substantial justice." *International Shoe*, 326 U.S. at 320. Applying a seven-part analysis articulated by the Ninth Circuit, Judge Cavan found the exercise of jurisdiction over Nelson reasonable under the circumstances. In her objection, Nelson renews her claims regarding the weakness of the merits of the Ferchos' case; the Court does not consider such arguments, as they are not relevant to the jurisdictional analysis.

Nelson raises one point that must be considered, though. She objects on the grounds that the Ferchos, not Nelson, bear responsibility for Patsy Fercho's presence in Montana and that it is unreasonable to require Nelson to appear in Montana given that the Ferchos chose the forum. The Court is not unsympathetic to the inconvenience faced by Nelson. However, Judge Cavan correctly found that the other six factors weigh in favor of jurisdiction, and the Court agrees with his analysis. Thus, it overrules Nelson's objections regarding reasonableness.

**C. Venue**

Nelson also moved to dismiss the Ferchos' claims against her for improper

venue under Federal Rule of Civil Procedure 12(b)(3). As relevant here, venue is

appropriate in "a judicial district in which a substantial part of the events . . . giving

rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Because the claims arise from

Patsy Fercho's arrest in Lame Deer, Montana, Judge Cavan found that the District

of Montana is an appropriate venue. Nelson, again, claims that Judge Cavan erred

because there was "no wrongful arrest" and "no legally cognizable injury." (Doc.

77 at 10.) However, these arguments are not relevant to the issue of venue. The

Court therefore overrules the objection to venue.

## II. Rieger's Motion to Dismiss for Failure to State a Claim

Rieger moved to dismiss Counts III through VII of the Complaint. Judge

Cavan recommended that the Court grant in part the motion to dismiss Count III,

grant in full the motion to dismiss Counts IV and V, and otherwise deny the

motion. Only the Ferchos have properly[3] objected to the Findings and

Recommendation, and they have objected only to Count V, alleging violation of

Patsy Fercho's right to be free from unreasonable seizures under the Montana

---

[3] As previously discussed, Nelson's objection to this portion of the Findings and
Recommendation is not an appropriate objection. *See supra* p. 3 n.1.

Constitution. Thus, the Court considers de novo the question of whether Fercho's arrest was in violation of Article II, section 11 of the Montana Constitution.

Judge Cavan determined that Patsy Fercho's arrest did not violate her rights under the Montana Constitution because the arrest warrant was valid under Montana law. The Ferchos' primary objection is grounded in Montana Code Annotated § 46-6-214. They contend that Judge Cavan erred by failing to interpret this provision and that, had Judge Cavan considered § 46-6-214, he would have necessarily concluded that the warrant was invalid. The Ferchos argue that, because the warrant was not valid under Montana law and no exception to the warrant requirement can be found, the arrest violated Patsy Fercho's state right to be free from unreasonable searches.

Article II, section 11 of the Montana Constitution guarantees to citizens the right to "be secure . . . from unreasonable . . . seizures." "[B]arring limited exceptions, a warrantless search or seizure is categorically unreasonable." *Montana v. Neiss*, 443 P.3d 435, 446 (Mont. 2019). The Ferchos argue that Patsy Fercho's arrest was unreasonable under the Montana Constitution because the warrant's issuance does not comport with Montana's statutory standards, rendering the warrant invalid. Specifically, they argue that the warrant is invalid under

Montana Code Annotated § 46-6-214(1), which provides that "[a]n arrest warrant must:

> (a) be in writing in the name of the state of Montana or in the name of a municipality if a violation of a municipal ordinance is charged;
>
> (b) set forth the nature of the offense;
>
> (c) command that the person against whom the complaint was made be arrested and brought before the nearest or most accessible court for an initial appearance;
>
> (d) specify the name of the person to be arrested or, if that person's name is unknown, designate the person by any name or description by which the person can be identified with reasonable certainty;
>
> (e) state the date when issued and the municipality or county where issued; and
>
> (f) be signed by the judge of the court with the title of office noted.

The Ferchos assert five failings under § 46-6-214, positing that the warrant is invalid under the provision because: (1) it was issued in the name of the state of Minnesota, and not Montana, as required by Montana Code Annotated § 46-6-214(1)(a); (2) it does not set forth an arrestable "offense," as required by § 46-6-214(1)(b), as the only permissible offenses under the statute are those proscribed by Montana law; (3) it was an impermissible attempt to command Montana officers to execute a Minnesota warrant against a Montana resident; (4) Patsy Fercho is not a "person against whom [a] complaint is made" under § 46-6-214(1)(c) because the warrant issued as part of a civil proceeding initiated by

18

Fercho herself; and (5) the warrant did not provide for Fercho to be brought to "the nearest or most accessible court for an initial appearance" but instead to Olmstead County, Minnesota. The Court assumes, strictly for the sake of this Order, that a technical violation of § 46-6-214 is equivalent to an infringement of an individual's rights under the Montana Constitution. It also assumes that Patsy Fercho may seek redress under the Montana Constitution in a civil action for a warrantless arrest executed by federal and tribal law enforcement officers within Indian Country.

Even with these assumptions made, and even if the Ferchos' statutory analysis is correct, they are not entitled to relief under the Montana Constitution. Judge Cavan did not err in failing to interpret § 46-6-214(1) because that provision does not limit officers' ability to execute out-of-state warrants. A separate provision does, § 46-6-210, which Judge Cavan thoroughly considered. Under § 46-6-210, Patsy Fercho's arrest was valid because "the officer ha[d] a warrant commanding that the person be arrested."

Plainly, § 46-6-214 sets forth the form and content for Montana warrants, not those issued by other states. Montana cannot legislate the means by which Minnesota courts issue warrants, although it may limit the effect that Montana gives to out-of-state warrants. Section § 46-6-210 includes one such limitation;

19

where an officer does not "ha[ve] a warrant" but rather "believes on reasonable grounds" that warrant has been issued, that officer may execute an out-of-state warrant only when the warrant is for a felony offense. In this instance, if Wind did not have the Minnesota warrant but only believed that it had been issued, Fercho's arrest would have been in violation of § 46-6-210 (subject to the assumptions outlined above).[4] The Ferchos' reading of § 46-6-214 as imposing a jurisdictional limitation on *all* warrants would nullify the clear distinction drawn between in-state and out-of-state warnings in § 46-6-210 because it would render void all out-of-state warrants.

The Court finds no clear error in the remainder of the Findings and Recommendation. Accordingly, IT IS ORDERED that:

(1) Judge Cavan's Findings and Recommendation (Doc. 74) is ADOPTED in full;

(2) Defendant Jenny Nelson's Motion to Dismiss (Doc. 38) is DENIED; and

(3) Defendant Olivia Rieger's Motion to Dismiss (Doc. 44) is GRANTED in part and DENIED in part.

---

[4] The Ferchos have not objected specifically to Judge Cavan's interpretation of § 46-6-210, and so the Court reviews this portion of the Findings and Recommendation for clear error.

DATED this 9th day of January, 2020.

Dana L. Christensen, Chief Judge
United States District Court