**FILED**

1/27/2020

Clerk, U.S. District Court
District of Montana
Helena Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| PATSY FERCHO, ALLEN FERCHO, | CV 18-86-BLG-DLC-TJC |
| Plaintiffs, | |
| vs. | **FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| UNITED STATES OF AMERICA, JENNY L. NELSON, OLIVIA RIEGER, ERIC BARNOSKY, DONOVAN WIND, | |
| Defendants. | |

Plaintiffs Patsy and Allen Fercho filed this action against Defendants United States, Jenny L. Nelson, Olivia Rieger, Eric Barnosky, and Donovan Wind arising out of an arrest of Patsy Fercho on the Northern Cheyenne Indian Reservation on November 21, 2015. The arrest occurred in connection with a custody dispute concerning the Ferchos' grandsons.

Presently before the Court are Defendant Eric Barnosky's Motion to Dismiss (Doc. 65), Defendant United States' Motion for Judgment on the Pleadings (Doc. 79), and Defendant Donovan Wind's Motion to Dismiss (Doc. 56). The motions have been referred to the undersigned under 28 U.S.C. § 636(b)(1)(B), and are fully briefed and ripe for the Court's review.

1

Having considered the parties' submissions, the Court **RECOMMENDS** Barnosky's Motion to Dismiss be **GRANTED in part and DENIED in part**, the United States' Motion for Judgment on the Pleadings be **GRANTED in part and DENIED in part**, and Agent Wind's Motion to Dismiss be **DENIED as moot**.

## I.    FACTUAL BACKGROUND[1]

### A.    Parties

The Court previously set forth the factual background in this case at length in its August 1, 2019 Findings and Recommendation.  (*See* Doc. 74.)  The Court presumes familiarity with the basic factual background.  Thus, rather than reciting all of the facts at length here, the Court will focus on the facts that are relevant to the determination of the pending motions.

Patsy and Allen Fercho are the grandparents of two children, E.L and L.L. Dereck Lorenz is the natural father of E.L. and L.L.  The Ferchos and Lorenz have engaged in a lengthy and contentious custody dispute that involved actions filed in Montana, Minnesota and the Northern Cheyenne Tribal Court.

---

[1] For the purposes of these motions, the Court accepts as true the allegations contained in the Ferchos' Complaint.  *Wyler Summit P'ship v. Turner Broadcasting Sys, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  The Court also takes judicial notice of court documents from the Montana Seventh Judicial District Court, the Third Judicial District in Olmstead County, Minnesota, and the Northern Cheyenne Tribal Court.

2

Defendant Jenny L. Nelson is a Minnesota attorney, who represented Lorenz in connection with the child custody action filed by the Ferchos in Minnesota. Defendant Olivia Rieger was the County Attorney for Dawson County, and was involved in the Dawson County custody action and in efforts to assist Lorenz in recovering custody of his children from the Ferchos in 2015.

Defendant Donovan Wind is an agent employed by the Bureau of Indian Affairs ("BIA") and also served as Chief of Police for Lame Deer, Montana. Agent Wind, accompanied by BIA Agent Molanna Clifford, was involved in the arrest of Mrs. Fercho on the Northern Cheyenne Reservation in November 2015.

Defendant Eric Barnosky is and was at all relevant times, the regional director for the Montana Department of Public Health and Human Services ("DPHHS"). He was involved in efforts to assist Lorenz in recovering custody of his children from the Ferchos in 2015.

### B.    Custody Dispute

In 2014, the Montana Seventh Judicial District Court, Dawson County awarded custody of E.L. and L.L. to Lorenz. At the time the Montana case was terminated, Lorenz and the children lived in Minnesota.

On June 1, 2015, the Ferchos filed a petition seeking custody of the children in the Third Judicial District in Olmstead County, Minnesota. Three days later, on

3

June 4, 2015, Mrs. Fercho also filed a petition seeking custody of E.L. and L.L in the Northern Cheyenne Tribal Court.

Northern Cheyenne Tribal Court Judge Donna Gonzales granted Mrs. Fercho emergency guardianship, and later granted her permanent guardianship and physical custody of the children.  In September 2015, the Ferchos, with the assistance of sheriff's deputies in Minnesota, used the Tribal Court order to remove the children from school and daycare.  The Ferchos brought the children back to Montana.

Thereafter, Lorenz filed a new action in the Montana State District Court for Dawson County to regain custody of his children.  The Montana court temporarily awarded custody of E.L. and L.L. to Lorenz, pending resolution of the jurisdictional and custody issues by the Minnesota court.  But Mrs. Fercho did not comply with the order.  Instead, she took the children to a church within the boundaries of the Northern Cheyenne Reservation, where she stayed until she was arrested.

Meanwhile, Lorenz's Minnesota attorney, Nelson, reached out to various persons in Montana, including Rieger, Barnosky and Wind, seeking assistance in obtaining the return of the children to Lorenz's custody.  Initially, Rieger, in her role as Dawson County Attorney, filed custodial interference charges against Mrs. Fercho and obtained an arrest warrant on October 7, 2015.  The charges were later

dismissed, however, and the warrant was quashed.  Thereafter, custody hearings were held in Montana and Minnesota, which were resolved in favor of Lorenz. Nevertheless, Mrs. Fercho failed to comply with the courts' orders to return the children to Lorenz.  Eventually, a motion for contempt was filed in Minnesota. When Mrs. Fercho failed to appear at a show cause hearing, the Minnesota court issued a bench warrant for her arrest.  On November 21, 2015, BIA Agents Wind and Clifford arrested Mrs. Fercho pursuant to the Minnesota warrant, and the children were returned to Lorenz.

Communications between Nelson, Rieger, Wind and others surrounding these events were documented in several email exchanges.  The following are relevant to the claims against Barnosky and the United States.

On October 13, 2015, Barnosky forwarded Rieger a copy of a *Billings Gazette* article about Mrs. Fercho and the children seeking refuge on the Reservation.  The next morning, Rieger responded to Barnosky stating, "Read it last night – disgusting and SO one sided.  What can we do, does your team have any ideas?"  Barnosky responded by contacting BIA Agent John Dodd later that evening.

The following morning, on October 14, 2015, Barnosky sent Rieger Agent Dodd's contact information.  Barnosky then emailed Agent Dodd.  Barnosky summarized the custody proceedings involving the Ferchos; advised Agent Dodd

5

that Dawson County had issued a warrant for Mrs. Fercho; gave Agent Dodd

copies of the Montana and Minnesota court orders granting Lorenz custody;

provided Rieger's contact information; and supplied biographical information for

Mrs. Fercho and the children.  Barnosky also asked Agent Dodd to contact Rieger

or himself if he located Mrs. Fercho, and advised "MT Child & Family Services

has agreed to hold the boys until their birth father is able to travel to Montana to

take physical custody."

An hour later, Rieger sent an email to Nelson and Agent Dodd, and copied

Barnosky.  She informed them that the Dawson County warrant had been quashed,

but indicated she believed charges may be brought in Minnesota.

Later that evening, Agent Dodd told Barnosky that if a Minnesota warrant

was issued, he would like it to be "extraditable" which would "make the situation

much easier" for him.  Barnosky relayed Agent Dodd's request for an

"extraditable" warrant to Rieger.

On October 15, 2015, Rieger learned that the County Attorney of Olmsted

County, Minnesota declined to file charges against Mrs. Fercho.  Rieger then

contacted Rosebud County Attorney Kristine White to discuss potential charges

against Mrs. Fercho in Montana.  Afterward, Rieger emailed Barnosky to ask his

opinion of whether White would file charges.  Rieger indicated she didn't "know

[White] well."  Barnosky answered, "I would guess she would, but you might have

6

to walk her through it.  She is still learning her job."  Rieger responded, "I'm going to work on her, then.  Thanks for the inside tip."

On October 19, 2015, Agent Dodd gave Nelson contact information for Agent Wind.  The next day, Nelson sent an email to Agent Wind informing him of the Tribal Court's order granting guardianship of the children to Mrs. Fercho and requested that he "retrieve" the boys.  She also explained:

> I spoke with Agent Dodd, and he stated that if the higher court didn't quash the Guardianship Order issued by Judge Gonzales, that the Lame Deer police department may not enforce the Minnesota order and help my client retrieve the children . . . If the issue were litigated in the Northern Cheyenne Court, it would be res judicata and we could not follow up on the initial action that was filed here in Minnesota . . .

Agent Wind forwarded Nelson's email to Northern Cheyenne Tribal Court Judge Roni Brady.

A couple of weeks later, on November 4, 2015, Nelson sent Barnosky an email expressing frustration after she had learned that Agent Dodd was instructed not to work on the Fercho matter, even though he had previously indicated he would go onto the Reservation and retrieve the boys.  Barnosky replied, "When I spoke to BIA Agent John Dodd, I understood he is willing to arrest Patsy if/when a warrant for her arrest is issued.  He has been instructed, because of the conflicting custody orders, not to take custody of [the boys] at this time.  I believe Agent Dodd

may have some idea where Patsy and the boys are, but he doesn't want to alert her before he has the ability to arrest her."

A few days later, Rieger sent Barnosky an update on the plan she and Nelson had devised to serve Mr. Fercho with the Minnesota order to show cause in hopes of obtaining a bench warrant if he did not appear.  Rieger stated, "[w]ith a bench warrant Patsy can be arrested on the Rez.  I will wait with great anticipation November 20 but I would bet Patsy and Allen are no shows."

On November 20, 2015, the Minnesota court issued a bench warrant for Mrs. Fercho, as anticipated.  Barnosky sent an email to Rieger that afternoon stating, "Patsy & boys didn't appear in court.  Patsy & Alan [sic] have been found in contempt & an arrest warrant is being issued."  Later that day, Nelson sent a copy of the bench warrant to Rieger and Barnosky.  That evening, at 6:30 p.m., Barnosky sent an email to Agent Dodd stating that Althea Foote, a BIA employee, thought she saw Mrs. Fercho a few days earlier.

The next day, on November 21, 2015, Nelson sent an email to Agent Wind with copies of the Minnesota bench warrants.  She told Agent Wind that "your department has jurisdiction to serve the warrants. . ." and requested his assistance in executing them and helping Lorenz locate his children.  Agent Wind told Nelson that he needed to inform a Tribal Court judge about the warrants.  He also advised he needed to contact the Big Horn County Sheriff's office to determine if they

8

would enforce the warrant, and also contact Minnesota to find out if they would extradite Mrs. Fercho.  Thereafter, Agent Wind arranged to have Lorenz come to the Reservation to pick up the children.

Agent Wind contacted Tribal Court Judge Roni Brady about the warrant. Agent Wind asked Judge Brady if Lorenz needed to go before the Tribal Court to get an emergency custody order, since Mrs. Fercho, the guardian, would be taken to jail.  Judge Brady indicated that Agent Wind could release the children to Lorenz based on the order from the Minnesota court.  Agent Wind also contacted a Big Horn County sheriff's deputy, who informed him that Big Horn County would enforce the warrant and would contact Minnesota authorities about extraditing Mrs. Fercho.

At approximately 4:00 p.m., Agent Wind informed his dispatcher that he wanted Agent Clifford to meet him at the Circle of Life Church.  At 4:30 p.m. he instructed dispatch to fax a copy of the bench warrant to Big Horn County.  He also requested that a Big Horn deputy drive to Highway 212 between Hardin and Lame Deer to meet the BIA vehicle in order to take custody of Mrs. Fercho.  At approximately the same time, Agent Wind arrived at the church.  Agent Molanna arrived shortly thereafter.

Mrs. Fercho, her mother, Harriet Ames, and the two children were at the church.  Agent Wind advised Mrs. Fercho that he had a warrant for her arrest, and

that she was going to be taken to Hardin where she would be held until Minnesota officers arrived to take her to Minnesota.  Mrs. Fercho indicated she would not leave the church voluntarily.  The Ferchos allege Agent Wind threatened to use force against Mrs. Fercho and her mother, and that Mrs. Fercho became so scared she vomited.  The Ferchos further allege L.L. began screaming.

Agent Wind placed the children in his vehicle and drove to the Lame Deer police station.  He later dropped the children off with Lorenz at the boundary of the Reservation.  Agent Clifford handcuffed Mrs. Fercho and placed her into a BIA vehicle, and drove her westbound toward Hardin.

At 4:50 p.m., Agent Wind sent a text message to Tribal Court Judge Brady advising that Mrs. Fercho had been arrested, and that Lorenz was present with his Minnesota custody order.  He again asked if an emergency custody order needed to be obtained from the Northern Cheyenne Tribal Court; Judge Brady said it did not.

At approximately 5:02 p.m., the Big Horn County dispatcher contacted officials in Olmsted County, Minnesota, who stated they would not seek Mrs. Fercho's extradition.  Nevertheless, Agent Clifford continued driving toward Hardin with Mrs. Fercho until approximately 5:33 p.m., at which point she turned her vehicle around, returned to the church, and released Mrs. Fercho.

On May 23, 2018, Mrs. Fercho initiated this action against the United States. (Doc. 1.)  Subsequently, a Second Amended Complaint was filed which added Mr.

10

Fercho as a plaintiff and Nelson, Rieger, Barnosky and Agent Wind as defendants. (Doc. 28.)  Counts I and II are brought only against the United States, and allege claims for false imprisonment (Count I), and abuse of process (Count II).  Counts III through VII are brought against Barnosky and the other Defendants, and allege: civil conspiracy to commit abuse of process (Count III); seizure in violation of the Fourth Amendment to the U.S. Constitution (Count IV); seizure in violation of the Montana Constitution (Count V); conspiracy to inflict emotional distress (Count VI); and loss of consortium (Count VII).  (*Id.*)

## II.   DISCUSSION

### A.   Barnosky's Motion to Dismiss

Barnosky has filed a motion to dismiss Counts III – VII under Fed. R. Civ. P. 12(b)(6).  As an initial matter, the Ferchos argue Barnosky's motion to dismiss for failure to state a claim is untimely under Rule 12(b)(6), because it was filed after Barnosky answered the Second Amended Complaint.  The Ferchos are correct.  *See* Fed.R.Civ.P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.").  Nevertheless, the Court in its discretion, will construe Barnosky's motion as a timely motion for judgment on the pleadings under Rule 12(c).  *Patrick v. Rivera-Lopez*, 708 F.3d 15, 18 (1st Cir. 2013) (recognizing an untimely motion to dismiss may be

considered as a motion for judgment on the pleadings since the same standard is applied to both.)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c).  A Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  *Cafasso, United States ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).  Thus, the same legal standard "applies to motions brought under either rule."  *Id*.

"Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).  The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  While "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and

12

conclusions, and a formulaic recitation of the elements of a cause of action will not do...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations and citations omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 2014 WL 4290615, *10 (9th Cir. 2014).

The Court's review of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is generally confined to the pleadings. *Ritchie*, 342 F.3d at 907; *U.S. v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011). Nevertheless, the Court also may consider documents attached to the pleadings, and may consider documents incorporated into the pleadings by reference. *Ritchie*, 342 F.3d at 908. Documents may be incorporated by reference where "(1) the complaint refers to the document;

(2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Corinthian Colleges*, 655 F.3d at 999.

### a.    Conspiracy to Commit Abuse of Process (Count III)

Barnosky argues the conspiracy to commit abuse of process claim fails as a matter of law because (1) there was no meeting of the minds between himself and Rieger and Nelson and (2) there was no abuse of process.  The Ferchos counter that Barnosky joined with the other Defendants in a scheme to use the Minnesota warrant to illegally arrest Mrs. Fercho.

The elements of a civil conspiracy claim are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.  *Simmons Oil Corp. v. Holly Corp.*, 852 P.2d 523, 530 (Mont. 1993). "[I]t is not the conspiracy itself that gives rise to the cause of action; it is the torts committed or the wrong done in furtherance of a civil conspiracy that do so." *Schumacker v. Meridian Oil Co.*, 956 P.2d 1370, 1373 (Mont. 1998).

In this case, the Ferchos allege a conspiracy to commit abuse of process.  A plaintiff alleging abuse of process must prove: (1) "a willful use of process not proper in the regular conduct of the proceeding;" and (2) "that the process was used for an ulterior purpose."  *Spoja v. White*, 317 P.3d 153, 157 (Mont. 2014). The legal process itself does not have to be unlawful to support an abuse of process

claim.  Rather, "[t]he legal process must be 'put to a use perverted beyond its intended purpose.'"  *Salminen v. Morrison & Frampton, PLLP*, 339 P.3d 602, 610 (Mont. 2014) citing *Brault v. Smith,* 679 P.2d 236, 240 (1984).  The Montana Supreme Court has explained that "[a]n abuse of process may occur when a party uses process to coerce another to 'do some collateral thing [that he] could not be legally and regularly compelled to do.'"  *Id.* citing *Judd v. Burlington Northern,* 186 P.3d 214. 217 (Mont. 2008).

First, the Court has previously determined that Mrs. Fercho's arrest was lawful under Montana law.  (*See* Doc. 74 at 34-38, adopted by Doc. 93.)  The Court also determined, however, that the Ferchos have stated a plausible claim for abuse of process in Count III.  (*Id.* at 38-40.)  As the Court explained, "Rieger, in concert with the other Defendants, used process (the Minnesota warrant) for the ulterior purpose of removing the children from the Tribal Court's jurisdiction.  Thus, even if the warrant was lawfully obtained, and Mrs. Fercho was lawfully arrested, if the warrant was used for the ulterior purpose of having Mrs. Fercho arrested so the children could be taken from the jurisdiction of the Tribal Court, the Ferchos have stated a plausible claim for abuse of process."  (*Id.* at 39.)

The Court therefore turns to Barnosky's remaining argument – whether the Ferchos have adequately alleged a meeting of the minds as to Barnosky.  The meeting of the minds element of civil conspiracy "requires a meeting of the minds

15

on the unlawful object or course of action" – which in this case is abuse of process. *Schumacker v. Meridian Oil Co.*, 956 P.2d 1370, 1373 (Mont. 1998). Circumstantial evidence may be used to establish this element. *Id.* at 1374.

Barnosky characterizes his involvement leading up to Mrs. Fercho's arrest as "rather unremarkable," and limited to sending and receiving "benign emails."  But the allegations in the Second Amended Complaint, taken as true, demonstrate that Barnosky knew he was aiding the other Defendants in allegedly circumventing the Tribal Court's custody order and jurisdiction.

For example, after Barnosky shared the *Billings Gazette* article with Rieger, she enlisted his help in returning the boys to Lorenz, by asking "[w]hat can we do, does your team have any ideas?"  Barnosky responded by reaching out to Agent Dodd and then gave Rieger Agent Dodd's contact information.  Barnosky's email to Agent Dodd shows that he was aware of the conflicting court orders, including the Tribal Court order granting Mrs. Fercho guardianship.  Regardless, he informed Agent Dodd of the then-active Montana arrest warrant for Mrs. Fercho, provided Agent Dodd with biographical information about Mrs. Fercho and the children, and stated his willingness to hold the children until Lorenz could get to Montana to re-take custody.

Later, after Rieger advised that the Montana warrant had been quashed, but said she hoped a Minnesota warrant would be issued, Barnosky acted as a conduit

16

to relay a message from Agent Dodd to Rieger.  He told Rieger that Agent Dodd preferred that any Minnesota warrant be "extraditable."

Barnosky also knew Rieger was trying to find a prosecutor who would charge Mrs. Fercho with custodial interference, and offered her an "inside tip" on one Montana prosecutor.  When Rieger asked Barnosky about his opinion of Rosebud County Attorney Kristine White, Barnosky opined he thought White would charge Mrs. Fercho, but recommended that Rieger "walk her through it" because White was "still learning her job."

Barnosky's emails with Nelson on November 4, 2015 and with Rieger on November 7, 2015 also indicate he understood their plan to obtain and use a Minnesota warrant to remove the children from the Tribal Court's jurisdiction. Indeed, he reassured Nelson that Agent Dodd was "willing to arrest Patsy if/when a warrant for her arrest is issued."  Rieger specifically told Barnosky that she was "waiting with great anticipation" to see if the Ferchos failed to appear at the show cause hearing in Minnesota, because "[w]ith a bench warrant Patsy can be arrested on the Rez."  Then, when the Ferchos ultimately failed to appear in Minnesota, Barnosky emailed Rieger to let her know that Mrs. Fercho had been found in contempt and an arrest warrant was being issued.

These communications, while not extensive, are sufficient to create a plausible inference that Barnosky knew of, agreed to, and participated in the other

Defendants' alleged abuse of process.  Accordingly, Barnosky's motion to dismiss should be denied as to Count III.

### b.      Seizure in Violation of the U.S. Constitution (Count IV)

Barnosky argues he is entitled to qualified immunity on the Ferchos' federal constitutional claim.  The Ferchos counter that Barnosky is not entitled to qualified immunity because Mrs. Fercho's arrest violated the Uniform Criminal Extradition Act ("UCEA"), the warrant could not be legally executed in Montana, and the Minnesota warrant lacked "indicia of probable cause."

Qualified immunity shields federal and state officials from civil liability under § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "To determine whether an officer is entitled to qualified immunity, a court must evaluate two independent questions: (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident."  *Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016).  The Court has discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"  *Mullenix v. Luna*, 136 S.Ct.

305, 308 (2015) *citing Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012).

As the Court previously explained with regard to the identical claim against Rieger, "Mrs. Fercho's arrest did not violate the Fourth Amendment."  (Doc. 74 at 43, adopted by Doc. 93.)  The Court also determined that even if Mrs. Fercho's arrest was unlawful, "it would not have been apparent to Rieger or the other Defendants that Mrs. Fercho's arrest was unlawful" in light of the plain language of Mont. Code Ann. §§ 46-3-301 and 46-6-201.  (*Id.* at 43-44.)  The Court further rejected the Ferchos argument that the Minnesota warrant lacked indicia of probable cause and found it to be a facially valid warrant.  (Doc. 74 at 44-46.)

The Court finds Barnosky is entitled to qualified immunity for the same reasons Rieger was entitled to qualified immunity on the Ferchos' Fourth Amendment claim.  (*See* Doc. 74 at 40-46.)  Barnosky's motion to dismiss Count IV should be granted.

### c.      Seizure in Violation of the Montana Constitution (Count V)

Barnosky argues the State constitutional claim should be dismissed because he had nothing to do with effectuating Mrs. Fercho's arrest and because her arrest was lawful.  The Court finds the claim fails as a matter of law, because as discussed in the Court's prior Findings and Recommendation, Mrs. Fercho's arrest did not violate Montana law.  (*See* Doc.74 at 34-38; 42-43, adopted by Doc. 93.)  Further, Judge Christensen specifically considered the Ferchos' argument, raised

here, that the warrant was invalid under Mont. Code Ann. § 46-6-214.  The Court

explained the Ferchos were "not entitled to relief under the Montana Constitution"

because § 46-6-214 "does not limit officers' ability to execute out-of-state

warrants."  (Doc. 93 at 19.)

Accordingly, Barnosky's motion to dismiss Count V should be granted.

### d.      Intentional Infliction of Emotional Distress (Count VI)

Barnosky argues Mrs. Fercho's claim for conspiracy to intentionally inflict

emotional distress should be dismissed because there was no meeting of the minds

between himself and the other Defendants.  Alternatively, Barnosky argues the

factual allegations in the Second Amended Complaint fail to cross the threshold of

severe or serious emotional distress.

As to Barnosky's first argument, the Court has determined the Ferchos have

sufficiently alleged a meeting of the minds between Barnosky and Nelson and

Rieger to use the Minnesota warrant for the ulterior purpose of removing Mrs.

Fercho's grandchildren from the Tribal Court's jurisdiction.  Montana law

recognizes an independent cause of action for infliction of emotional distress

"under circumstances where serious or severe emotional distress to the plaintiff

was the reasonably foreseeable consequence of the defendant's negligent or

intentional act or omission."  *Sacco v. High Country Ind. Press, Inc.*, 896 P.2d 411,

429 (Mont. 1995).  The Court finds it may have been reasonably foreseeable to

Barnosky and the other Defendants that Mrs. Fercho's arrest in the circumstances of this case could cause serious emotional distress.

As to Barnosky's second argument, the Court has already addressed an identical argument raised by Rieger with regard to Count VI, and found the Ferchos allegations are sufficient to withstand a motion to dismiss, at least at this early stage.  (Doc. 74 at 46-49 adopted by Doc. 93.)  As the Court previously noted, Mrs. Fercho alleged that she suffered severe emotional distress, together with a physical manifestation of the distress (i.e., that she "became so terrified she vomited").  Thus, Mrs. Fercho has stated a plausible claim for conspiracy to intentionally inflict emotional distress.

Accordingly, Barnosky's motion to dismiss Count VI should be denied.

### e.    Loss of Consortium (Count VII)

Finally, Barnosky contends Mr. Fercho is not entitled to loss of consortium damages.  He argues Mr. Fercho's derivative consortium claim fails because Mrs. Fercho has not stated a viable claim for intentional infliction of emotional distress.

Under Montana law, an independent cause of action for loss of consortium is derivative in nature.  *Mickelson v. Montana Rail Link*, 999 P.2d 985, 1003 (Mont. 2000).  This means that the success of Mr. Fercho's claim depends on the success of Mrs. Fercho's claim against the Defendants.  *Hunsaker v. Bozeman Deaconess Foundation*, 588 P.2d 493, 501 (1978).  As discussed above, Mrs.

21

Fercho has stated a claim for intentional infliction of emotional distress.  Mr. Fercho's derivative claim is therefore viable.

Accordingly, Barnosky's motion to dismiss Count VII should be denied.

### B.      The United States Motion for Judgment on the Pleadings

### a.      False Imprisonment (Count I)

The United States argues that because the BIA officers detained Mrs. Fercho pursuant to a facially valid warrant, her claim for false imprisonment fails as a matter of law.  The Ferchos counter that the warrant was facially invalid under Mont. Code Ann. § 46-6-214.  They further argue the warrant could not be validly executed under Mont. Code Ann. § 46-6-210.

False imprisonment requires: (1) a restraint of an individual against his or her will; and (2) unlawfulness of the restraint.  *Hardy v. LaBelle's Distrib. Co.*, 661 P.2d 35, 37 (Mont. 1983).  "It is well-settled that a court's determination of probable cause is a complete defense to a claim of false arrest or imprisonment." *Kichnet v. Butte-Silver Bow Cty.*, 274 P.3d 740, 745 (Mont. 2012).

Here, the Ferchos concede that Mrs. Fercho was arrested pursuant to a warrant supported by probable cause.[2]  (*See* Doc. 89 at 21 ("The Ferchos do not

_____

[2] The Court also previously noted the Minnesota warrant did not lack probable cause, stating "the Minnesota warrant was issued pursuant to the Minnesota court's determination that Mrs. Fercho failed to obey the order of the court to appear for a show cause hearing.  The arresting officers were entitled to rely on that determination."  (Doc. 74 at 45, adopted by Doc. 93.)

dispute that the Minnesota court had probable cause to issue bench warrants when they failed to appear in that court on November 20, 2015.").)  As such, the Ferchos' claim for false imprisonment necessarily fails as a matter of law.

Further, the Ferchos' arguments concerning the validity of the warrant under Mont. Code Ann. § 46-6-214, and its execution under § 46-6-210, have been rejected by this Court.  As noted above, Judge Christensen determined that §46-6-214(1) does not apply to warrants issued by other states, and does not limit law enforcement officers' ability to execute out-of-state warrants.  (Doc. 93 at 19-20.)  Likewise, Judge Christensen adopted this Court's finding that Mrs. Fercho's arrest was lawful under the plain language of § 46-6-201.  (Doc. 74 at 34-36; 42, adopted by Doc. 93.)

Because Mrs. Fercho was lawfully restrained pursuant to a facially valid warrant that was supported by probable cause and did not violate Montana law, her false imprisonment claim fails.  Therefore, the United States' motion should be granted as to Count I.

### b.    Abuse of Process (Count II)

The United States next argues the Ferchos' claim for abuse of process fails because the BIA agents had probable cause to arrest Mrs. Fercho based on the Minnesota warrant; and probable cause constitutes a proper purpose for the use of court process.  The United States further contends the BIA agents were authorized

23

by law to arrest Fercho, thus their conduct cannot amount to an abuse of process. Finally, the United States asserts the BIA agents did not act with an ulterior purpose in arresting Mrs. Fercho.

The Ferchos counter that the execution of the warrant was not proper in the regular conduct of the proceedings because it was used to improperly disrupt the proceedings in the Tribal Court, and it violated Montana law. The Ferchos further argue Agent Wind acted with the ulterior purpose of aiding Nelson in depriving the Tribal Court of jurisdiction over the children.

As stated above, abuse of process requires (1) a willful use of process that is not proper in the regular conduct of the proceeding; and (2) an ulterior purpose. *Spoja*, 317 P.3d at 157. Here, the Court has already determined that Mrs. Fercho was arrested pursuant to a facially valid warrant that was supported by probable cause. (Doc. 74 at 34-38; 42-43; Doc. 93 at 17-20.) In addition, federal law authorized Agent Wind to assist "any Federal, tribal, State or local law enforcement agency in the enforcement or carrying out the laws or regulations the agency enforces or administers." 25 U.S.C. §2803(8). Thus, the BIA agents did not unlawfully arrest Mrs. Fercho.

But as the Court explained in the prior Findings and Recommendation, even if Mrs. Fercho's arrest was lawful, it does not necessary follow that the Ferchos' abuse of process claim fails. (Doc. 74 at 38.) The legal process itself does not

24

have to be unlawful to support an abuse of process claim.  Rather, "[t]he legal

process must be 'put to a use perverted beyond its intended purpose.'"  *Salminen*,

339 P.3d at 610.  The Court therefore must consider whether the Ferchos have

sufficiently alleged the BIA agents acted with an ulterior purpose.

The Court has found the Ferchos stated a plausible claim for abuse of

process by the other Defendants based on the allegations that Rieger, Nelson and

Barnosky acted in concert to use the Minnesota warrant for the ulterior purpose of

removing the children from the Tribal Court's jurisdiction.  (Doc. 74 at 39.)  The

question here is whether the Fercho's allegations also plausibly allege Agent Wind

acted with an ulterior purpose.[3]

Based on the allegations in the Second Amended Complaint, it can be

inferred that Agent Wind knew that Nelson wanted to have Mrs. Fercho arrested

for the purpose of removing the children from the Tribal Court's jurisdiction.  On

October 20, 2015, Nelson sent an email to Agent Wind informing him of the Tribal

Court's order granting guardianship to Mrs. Fercho, and requesting that he

"retrieve" the boys.  She also expressed why she desired to circumvent the Tribal

---

[3] The parties' briefing focuses on Agent Wind's motives.  The Second Amended
Complaint alleges Agent Clifford was also involved in Mrs. Fercho's arrest.  But
the Ferchos have not alleged that Agent Clifford knew about the other Defendants'
plan to have Mrs. Fercho arrested for the purpose of returning the children to
Lorenz.  As such, the Court finds the Ferchos' abuse of process claim against the
United States fails to the extent it is based on the actions of Agent Clifford.

Court's guardianship order.  Specifically, she advised Agent Wind that if the Tribal

Court order was not quashed, the Lame Deer police were unlikely to enforce the

Minnesota custody order, and if "the issue were litigated in the Northern Cheyenne

Court, it would be res judicata and we could not follow up on the initial action that

was filed [] in Minnesota."

It can also be inferred from the allegations that Agent Wind acted with the

purpose of aiding Nelson in achieving her goal.  After Nelson sent Agent Wind a

copy of the arrest warrant on November 20, 2015, he arranged to have Lorenz

come to the Reservation to pick up the children.  He also arrested Mrs. Fercho, put

the children in his vehicle, and eventually dropped them off with Lorenz at the

boundary of the reservation.

The United States counters that Agent Wind's actions demonstrate the

opposite of what the Ferchos' claim – that rather than act with an ulterior purpose,

he "took meticulous care to employ proper procedures in connection with [Mrs.]

Fercho's detention and release of E.L. and L.L. to their father."  (Doc. 81 at 20.)

The United States points out that Agent Wind contacted Judge Brady twice to

determine whether it was proper to release the children to Lorenz if Mrs. Fercho

was arrested on the Minnesota warrant.  Wind also contacted a Big Horn County

sheriff's deputy.  The deputy confirmed that Big Horn County would enforce the

warrant and would contact Minnesota authorities to determine if and when they

would extradite Mrs. Fercho.

The United States' interpretation of the allegations in the Second Amended Complaint are also plausible.  Nevertheless, at this stage of the proceedings, and taking the allegations in the Second Amended Complaint as true, the Court finds the Ferchos have stated a plausible claim for abuse of process against the United States.  When Agent Wind arrested Mrs. Fercho he knew about the Tribal Court order and knew that Nelson's purpose in sending him the Minnesota warrant was to remove the children from the Tribal Court's jurisdiction.  Again, the Court cautions that it does not find Agent Wind, or the other Defendants did, in fact, abuse process, but only that under the applicable Rule 12(b)(6) standard, the Ferchos have stated a plausible claim for relief.

Accordingly, the United States motion should be denied as to Count II.

### C.    Agent Wind's Motion to Dismiss

On January 15, 2020, the parties filed a Stipulation of Voluntary Dismissal as to Agent Wind, dismissing him from this action with prejudice.  (Doc. 94.)  In light of the stipulation, the Court recommends Agent Wind's Motion to Dismiss be denied as moot.

/ / /

/ / /

/ / /

27

III.   **CONCLUSION**

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.     Barnosky's Motion to Dismiss (Doc. 65) be **GRANTED in part and DENIED in part**;

2.     The United States Motion for Judgment on the Pleadings (Doc. 79) be **GRANTED in part and DENIED in part**.

3.     Agent Wind's Motion to Dismiss (Doc. 56) be **DENIED as MOOT**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 27th day of January, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge

28